ADAMS v. BROUGHTON, Adm'r.—BANKS v. SAME.

1. A voluntary deed, delivered to the grantee, conveying to him slaves, re-
serving to the grantor a life estate, is operative at common law against
purchasers, and subsequent creditors, and is also valid as between the
grantee, and the personal representative of the grantor, although he dies
in possession, and his estate is declared insolvent.

2. When such a deed is made in another State, and the property brought af-
terwards into this State by the grantor, there is no law requiring the deed
to be recorded.

3. Such an instrument, if made and delivered to a person in being, is a pre-
sent gift passing the title immediately, and therefore not testamentary in
its character.

4. A conveyance of slaves by deed by one residing in Georgia, reserving to
the donor the possession of the slaves during his life, and not made in
contemplation of a removal of the slaves to this State, is valid in this
State, without the registration required by the statute of frauds.

Error to the Circuit Court of Marengo.

DETINUE by Broughton, as the administrator of Thomas
Hightower, against Banks and Adams severally for certain
slaves. Actions commenced in January, 1845. At the trial
of the suit against Banks, the plaintiff made title to the slaves
in controversy, under a deed of gift executed in the State of
Georgia, in February, 1819, by one Joshua Hightower, by
which, after reciting its consideration to be "the love and
good will" of the grantor to his son, the plaintiff's intestate,
conveyed the slaves in controversy, or the mothers of them,
to the said son, "reserving to himself and his wife Polly the
use and enjoyment of the slaves during his lifetime and the
lifetime of his said wife." It was in proof that in 1820 or
1821, Joshua and Thomas Hightower both came to this State,
where they continued to reside until their respective deaths.
Thomas died in 1825, and Joshua in 1843, after the death of
his wife Polly. During the period of Thomas's residence in
this State, the slaves were a part of the time in his posses-

sion, and a part of the time in the possession of both the Hightowers. After the death of Thomas, although an administrator of his estate was appointed and acted, he did not take the slaves into possession, but they continued in the possession of Joshua, who controlled them apparently as owner during his lifetime. Debts were contracted by him on the faith of the property. In 1830, they were sold as his property by a constable, in virtue of executions from a justice's court, he being present, and making no objections to the sale. The defendant Banks, is the administrator of Joshua Hightower, and that estate has been declared insolvent. The defendant Adams is the purchaser of the slaves sold in 1830, and is the husband of a grand-daughter of Joshua Hightower. This defendant had heard it said in the family of Joshua, that a conveyance of some sort for some of his slaves had been made by him in Georgia to his son, but he neither knew what slaves were conveyed, nor had ever seen the deed. The deed was never recorded.

On this state of proof, the defendants asked the court to instruct the jury—

1. That the delivery of the deed recited, did not convey such a title as that the plaintiff, as administrator of Thomas Hightower, should recover.

2. That the deed is of a testamentary character, and no recovery could be had unless it was established as a will.

3. That in this State, the deed was void as against creditors and purchasers of or from Joshua Hightower, and if they believed Adams became the purchaser at constable's sale, without notice of any interest in Thomas Hightower's representatives, they should find in his favor.

These charges were refused, and the jury instructed—

4. That the instrument was a good and effectual deed of gift, and passed the title by its delivery. That the right of Thomas Hightower to sue did not accrue until the death of Polly and Joshua; but that after their deaths, the administrator of Thomas, if the deed was fairly made, though without any consideration, became entitled to recover the slaves thereby conveyed. And if the deed was made out of the State of Alabama, it was valid against the creditors and purchasers of and from Joshua Hightower, without being re-

corded. And that the defendant Adams, by his purchase, whether with or without notice, of the deed, acquired a right to the slaves only during the lives of Joshua and Polly Hightower.

The defendants excepted, and now assign that the court below erred in the charges given, as well as in its refusal to charge as requested.

A. R. MANNING and BROOKS, for plaintiff in error.

I. The writing, if valid at all, is a testamentary paper merely—"the just sentence of a man's will touching that which he would have done after his death." Swinburne on Wills; 1 Wms. on Ex'rs, 7. "A disposition of personal property, to take effect after death." 4 Kent's Com. 500. If such be the effect of an instrument, no matter what its form, or what the maker intended or supposed it to be, it is a 'will. 1 Wms. on Ex'rs, 53-4-5, and cases there cited; Shepard v. Nabors, 6 Ala. R. 631; Dunn and wife v. The Bank, 2 Ala. R. 155; Vernon v. Inabnit, 2 Brev. R. 411; Pitts v. Mangum, 2 Bail. R. 588; Crawford v. McElroy, 2 Spears' R. 230; Marshal v. Fulgham, 4 How. Miss. R. 220; Thompson v. Thompson, 2 Id. 737; Carradine v. Collins, 7 Smede & Mar. 432; Welch v. Kinnard, 1 Spears' Eq. Rep. 256.

In several of these cases, nothing but the reservations of life estates, prevented the instruments, which were in form deeds, and intended to be so, from operating as such.

To give such an one as the present effect as a deed of gift, is to create a very mischievous instrument, by which not only may the interests of creditors and purchasers be much endangered, but the object of the maker, to provide for a member of his family, may be, in many instances defeated. Besides being in effect an irrevocable will, in one aspect, it will be the fruitful source of domestic frauds and infelicity. See 1 Nott & Mc. 602.

2. This instrument is founded solely on love and affection. Its language in effect is, "I give you these slaves; but I do not give them to you till I die." It cannot be, by the common law, a deed of gift as contended. For "a gift or grant of chattels personal, is the act of transferring the

right and the possession, whereby one man renounces, and another *immediately* acquires all title and interest therein." 2 Black. Com. 355-6. To make a gift, the present property and the "command and dominion" must be transferred. 2 Kent, 438; Sims v. Sims's adm'r, 2 Ala. 117.

For, as the act proceeds from mere bounty, if the donor do not part with the "command and dominion" over the chattels, the common law would not require him so to do. Therefore, a gift by deed, (which is no more operative to transfer a title to personal property, than a parol agreement is —Marshall v. Fulgham, *supra*,) if valid without a delivery of the chattel, must convey a present property in—the "command and dominion" over it; the delivery of the deed then standing in the place of the thing given. Even an actual delivery of the chattel does not perfect the gift, unless the dominion over it be at the same time transferred. 2 Kent, 438; Sims v. Sims's adm'r, 2 Ala. 117; Durett v. Seawall, Id. 669; Reid v. Colcock, 1 N. & McC. 602; Pennington v. Gittings, 2 Gill & J. 214.

But our statute of frauds and fraudulent conveyances, in respect to subsequent purchasers, as well as creditors, does embrace personal chattels. (Wherefore the reasoning in the case of Bohn v. Headley, 7 Har. & J. 257, is in favor of plaintiff in error, Adams, instead of against him.) But another important change of the law is also, though only impliedly made by that act. It authorizes gifts of personal chattels to be made without a delivery of them. For such gifts are declared void as to creditors and subsequent purchasers only, unless they be by will or deed duly recorded, or "unless possession shall really and *bona fide* remain with the donee." This statute, adopted from Virginia in the very infancy of our territorial existence, (1803,) might make the law afterwards, what those who enacted it may possibly have thought it was before, and so perhaps justify the decision in the case of McRae v. Pegues, and one or two other similar ones.

3. If this instrument be a deed, the reservation is inconsistent with the premises, and therefore void. Ingram v. Porter, 4 McCord, 178; Vass and wife v. Hicks, 3 Murph. 493; Sutton v. Hallowell, 2 Dev. R. 186. Or, the limitation after the life estate would be void. Vernon v. Inabnit,

2 Brev. 411; Crawford v. McElroy, 2 Spears' R. 230; Graham v. Graham, 2 Hawks, 322; Foscue v. Foscue, 3 Ib. 538; Baldwin v. Joyner, 7 Iredell, 123.    And in the former case, the plaintiff in error acquired a title by six years' possession, which may be proved under the general issue.    3 J. J. Marsh. 365.

4. The instrument, if a deed of gift, is void against creditors and purchasers without notice, especially since, if such deed at all, it is become so by a change of the common law, made by the courts, or by operation of statutes.    Which change, therefore, must be made subject to the main object and policy of those statutes—the protection of *bona fide* creditors, and subject to the same policy of the common law. Cadogan v. Kennet, Cow. 434.    By that law, creditors and purchasers without notice are not chargeable with the secret rights and equities of mere volunteers.

J. W. HENLEY and BYRD, for the defendant in error, insisted—

1. That the instrument set out in the bill of exceptions is a deed, because—1. It has the form of a deed, showing that the parties intended to make a deed.    2. That it was not only signed and sealed, but delivered also.    3. That it purports to be founded on a consideration—that of love and affection, from the father to the son.

2. That it was not a will, because—1. It wants the form of a will.    2. It does not purport to be made in contemplation of death.    3. That it does not purport to convey the whole property of the donor.    4. That it does not purport to convey property to all the children of the donor.

3. But it is said that it is rather a will than a deed, because its operation is postponed to the death of the donor. But we reply that such is not the effect of the instrument. That it takes effect immediately.    By operation of the deed, the title to the slaves is at once divested out of the donor and vested in the donee.    The deed is in the present tense, "I give and grant," and does not purport to postpone the passing of title beyond the time of its execution.    It was only the possession of the property that was postponed to the death of the donor.    But such a condition of things is en-

tirely consistent with the rules of law. It was nothing more than a conveyance to one in trust for the use of another during his life, remainder over to the trustee in fee. Nothing is more clear than that the title to property may be in one, and the use or enjoyment in another. Here the title is conveyed to the donee, but the use or enjoyment of the property is reserved to the donor for a limited period. The deed takes effect immediately, and not *in futuro*. Rice's Eq. Rep. 261.

That such instruments have been held to be deeds and not wills, see Howard's Ex'r v. Gartman, Florida Rep. 63, 85, 88; Bohn v. Headley, 7 Harris & J. 257 to 272; Hope v. Hutchins, 9 Gill & J. 77; Cairns and wife v. Marley, 2 Yer. 582; 1 Humphrey's Rep. 171, 173; McRae v. Pegues, 4 Ala. R. 158; Banks v. Marksburg, 3 Litt. Rep. 278; 1 Jar. on Wills, 11.

4. That the same rules which prevail in the creation of life estates, with remainder over in real property, govern also in relation to personal property, 2 Kent's Com. 352.

That it is competent for one owning lands to make a deed on consideration of love and affection, conveying his estate to his children after his death, reserving to himself the use and enjoyment during his life. That in such case, though the estate of the children is to commence *in futuro* so far as its enjoyment is concerned, yet the deed will be supported as a declaration to stand seized to the use of the grantor during his life, and to the children after his death. Simmons v. Augustin, 3 Port. 69; Ib. 94.

There is no reason why the same rule ought not to be held to apply in case of personal property, and if necessary to support the deed, that the court would hold the donee a trustee for the donor during his life, and at his death to take the property discharged of the trust.

5. In the cases cited on the other side, from 2 Bailey and 12 N. H. 371, the gift was by parol, and not by deed. And the reservation of a use during life, or even for a day, was wholly inconsistent with the gift, whose essence was, the delivery of possession.

In the case of Sheppard v. Nabors, 6 Ala. Rep. 631, it is insisted, that the case is authority no further than that, in

that case, the plaintiffs were not entitled to recover, and that result would flow, whether the instrument had been declared a deed or a will.   If the court held it to be a deed, it was clear that only such of the children of Winney Sheppard as were alive at the making of the deed, could take under it, but as the action was brought in the names of many children born after that time, as well as those born before, a recovery could not be had under the instrument as a deed. But if the court had held it to be a will, it was equally clear that a recovery could not be had, as it had not been proved as a will.   It was therefore unnecessary to decide the character of the instrument.

6. That it was not necessary to record the deed in this State, as it was made in the State of Georgia; nor was it necessary to record it there, as it is not shown that by the laws of that State a record was necessary.

The statute of frauds cannot be held to apply to it, as the parties to the deed, and the property conveyed by it, were all in Georgia when the deed was executed.

It was never held that the laws of a State extended beyond her own jurisdiction.   The statute of frauds requires the record to be made in the county where the donor resides. The donor here lived in Clarke county, Georgia.   It was necessary then to record the deed there, if at all, and that under the laws of Alabama—a position wholly unsupported by authority.   Nor can it be contended, that on the removal of the property to this State, it was necessary to record the deed in the county where the parties resided.   The statute regulates what instruments are to be recorded, on removing property into the State.   It cannot be said that public policy can enlarge the operation of a statute.   As this was neither a "mortgage, deed of trust, or other legal incumbrance," under the terms of the statute, there was no necessity to record it.   Swift v. Fitzhugh, 9 Por. 39; Price v. Price, 5 Ala. R. 578; Thomas & Howard v. Davis, 6 Ala. R. 113; Catterlin v. Hardy, et al. 10 Ala. R. 511.

7. Banks cannot defend for the creditors of Joshua Hightower.   Marler v. Marler, 6 Ala. R. 367.

93

GOLDTHWAITE, J.—1. The deed under which the plaintiff in these suits makes title having been made in the State of Georgia, at a time when the slaves were there, is the matter which causes the chief difficulty; for it seems to be conceded, the deed, under our statutes of frauds, is inoperative against creditors and purchasers, because it was not registered, and because there was no transfer of the possession of the slaves. It may admit of question, whether property brought within this State is not governed by our statute, but we do not now purpose to discuss this point, and shall confine our examination to ascertaining, whether, by the course of the common law, the delivery of a voluntary deed, conveying an estate in personal chattels, to be enjoyed after the death of the grant, is operative, either against his personal representatives, when he dies in possession, or against his creditors, or a subsequent purchaser from him.

Independent of decisions upon this subject, it would seem strange if one, by a secret act, which need be known to but three persons—i. e., the grantor, the grantee, and the witness—should be permitted to clog his visible property, so as to defeat those who should afterwards credit him upon the faith of his being the owner, or to whom he should afterwards sell it for a valuable consideration. If this was permitted, it is evident there would be no security for either creditor or purchaser, as nothing would be more easy than for one thus to dispose of his entire estate, and the consequence would be, the enjoyment by his donee of the estate freed from the claims of creditors. Our statute of frauds possibly permits a gift so made, although the possession is not transferred at the time to the donee, but then the deed must be acknowledged and registered as the act directs. I apprehend that a gift could not be so made by the course of the common law, and that without a change in possession, actual and notorious, at the time, no estate, as against a creditor, or subsequent purchaser *without notice*, would pass by the delivery of a deed. I say *without notice*, because I deem this clear, but do not intend to be understood as declaring that a subsequent purchase would be avoided, even by the fact of notice, for it admits of much doubt whether the

possession and ownership can be disunited without the express sanction of legislative enactments.

It is somewhat singular that no decision upon this subject as a common law question, is to be found in the English books. This is probably owing to the fact that numerous statutes inhibiting fraud were there passed at an early period. Of this class, though by no means the earliest, are 13 Eliz. ch. 5, and 27 Eliz. ch. 4, which cover every possible ground of fraud—the first being in favor of creditors, and the last in favor of purchasers. They are both said by Lord Mansfield to be declaratory of the common law. Cadogan v. Kennet, Cowp. 434. And this seems also to have been the opinion of Sir Edward Coke. Coke on Litt. 76, a, 290, b. Neither of those statutes, in terms, avoid transactions merely because they are *voluntary*—i. e., without valuable consideration— but only such as are *fraudulent*. It is evident therefore, when the courts avoided conveyances merely on the ground that there was no valuable consideration to sustain them, this must by the common law have been considered as actual fraud, wherever a creditor, or subsequent purchaser came in contact with the volunteer. Yet we must not be led away, to suppose the common law prevented an owner, whether of real or personal estate, from renouncing his dominion over it, and transferring it to another—provided this renunciation was coupled with an actual change in the possession, *bona fide* and not colorable. Under these statutes, however, the courts seem to have considered it imperative on them to decide against a voluntary conveyance, independent of the question of possession. In Munn v. Wetmore, 8 Term, 529, where the possession seems to have followed the deed, Lord Kenyon admitted, that if the deed was voluntary, the law says it was fraudulent. In Otley v. Manning, 9 East, 58, all the decisions prior in point of time are collated, and the conclusion was, a voluntary conveyance, without fraud, was *per se* void, under the statute, against a subsequent purchaser.

It is inconceivable that so harsh a construction could ever have been put on the statute, unless the previous law had denounced the same consequences against similar conveyances, where the possession did not follow the deed. With-

out reference to any statute, as giving the rule, it seems well settled, that even when a sale is made, it will be void against a creditor, unless there is a change of possession, actual or notorious. Wendell v. Smith, 1 Camp, 332; Armstrong v. Baldeck, Gow. 33. It is said *arguendo* by counsel, in Bicknell v. Rolston, Pr. Ch. 285, that he had known the law so ruled forty times at Guildhall; and Gibbs, C. J., in Joseph v. Ingram, 8 Taunt. 838, in a case where an exception to the general rule was allowed, admitted the principle was established, that if a man sells goods, and continues in possession, the sale is void. Nor do the decisions of Kidd v. Rawlinson, 2 B. & P. 59, and Watkins v. Birch, 4 Taunt, 823, affect this rule, as in them, although the possession continued as it was before the purchase, the sale was made by the sheriff. It is true, with us this rule, as to attaching creditors, has been somewhat modified, so that the possession is *per se* evidence of fraud; yet every one must perceive that a subsequent purchaser has just as strong an equity as the previous one, and when he acquires the possession with the purchase, ought not to be defeated by the previous secret transfer. In Gardner v. Howland, 2 Pick. 599, it is said by the court, that to complete a sale of a chattel, so that the vendee may hold it against a subsequent purchaser, ignorant of the former sale, a delivery is necessary.

If such rules are applicable to cases where a money consideration is paid by both parties, how greatly more are they called for when one of them is a mere volunteer? It has been supposed, that because here the estate was not to vest in the donee until a future day, the possession of the donor is consistent with the deed. Possibly, if the conveyance was sustained by a valuable consideration, this circumstance might create a distinction, as the decisions certainly seem to indicate that there may be a valid mortgage of personal chattels, without a change of possession, but in my judgment, this failing, it only aggravates the mischief to the creditor or purchaser, that the one having the pretended adverse right, has no interest at stake to cause him to proclaim his title.

What I have said, with the citations made, in my judgment is satisfactory to show that a grantee to whom personal

chattels are conveyed by a voluntary deed not accompanied with possession, has no right whatever by the course of the common law, against either a creditor of the grantor or a purchaser from him, without notice of the conveyance.

2. It remains to consider the effect of the deed as against the personal representative of the grantor. Assuming, for the present, that this instrument is a deed, as distinguished from a will, it appears to be settled, in this court and elsewhere, that it is operative against the grantor's personal representatives. Marler v. Marler, 6 Ala. Rep. 367, and cases there cited. When the case referred to was decided, we had examined that of Bethel v. Stanhope, Cro. El. 810, with which it seems at variance. It is to be remarked, that Bethel v. Stanhope, was followed, after a lapse of a few years, by Hawes v. Leader, Cro. Jas. 270, where it was determined the administrator of the fraudulent donor could not resist the suit of the donee. This latter decision seems free from objections to which the other is apparent, for it may be, although there are creditors more than sufficient to exhaust the assets in the hands of the administrator, that they will never pursue those in the hands of the donee. Independent of this, as the fraudulent donee is liable to creditors as executor *de son tort*, it appears inconsistent he should at the same time be liable to the suit of the rightful administrator. These considerations confirm the opinion held by us in the case cited, and we feel no inclination to depart from the rule then settled.

3. It is urged, however, that this deed is in legal effect nothing more than a will, as the estate cannot be conveyed by the grantee until after the death of the grantor. It may be conceded there is much apparent force in this argument, but it will not stand examination. Formerly it was the rule, that no estate in expectancy could be created either in goods or chattels, unless the entire estate passed out of the grantor at the same time. In accordance with this, we find it laid down in the older books that a man cannot reserve a less estate than he has already to himself, unless he parts with the whole and re-takes that less estate by way of use. Cranmer's Case, 3 Dyer, 309, b. But in modern times, the law has been modified so as to permit those estates to be created directly, which could formerly be created in an indirect way.

A very similar reservation to this, for the life of a grantor, of real estate was held good in Simmons v. Augustin, 3 Porter, 69, and we can perceive no sound reason why a similar principle should not obtain with respect to personal property, as it is conceded by all the modern writers the same effect could be obtained by a conveyance in trust. 2 Black. Com. 398; Harg. Notes 3 Coke Litt. 20 a. The American cases are numerous to show that such a settlement by deed is admissible. Horn v. Gartner, 1 Florida Rep. 63, and cases there cited. It being ascertained that such a disposition may be made by deed, it follows, that if the thing be absolutely granted, and there is a grantee to take, that the transfer of the title as between the grantor and grantee is complete by the delivery of the deed. The case of Sheppard v. Nabors, 6 Ala. R. 631, is different from this, because there, although the form of the deed was quite similar, there was no grantee *in esse* at the time of its execution, and it may be inferred from the report, there was no evidence of its delivery to any one as a deed. Here, as every essential of a deed is proved, we feel constrained to pronounce, that such is the legal effect of the instrument, and as such, it is binding upon the personal representative of the grantor.

The result of what I have said is, that in my judgment, the court below erred in its exposition of the law, so far as it affects the suit against Adams, and that it did not err in the charges in the suit against Banks.

ORMOND, J.—The deed which is to be construed in this case, is a voluntary deed from a father to his son, conveying, upon the consideration of natural love and affection, certain slaves; the donor reserving to himself the right to use and enjoy the slaves, during his life, and that of his wife.

The effect of this deed was to convey to the donee, immediately upon its delivery, the title to the slaves, the right to the possession being reserved to the donor. The instrument was not testamentary in its character, but became immediately operative upon its execution.

This deed being made in Georgia, it becomes necessary to consider what is its effect at common law. It is contended by my brother Goldthwaite, that it is fraudulent, and void,

by the common law, against creditors, whether prior, or subsequent to the deed, and also against subsequent purchasers without notice of the deed. He arrives at this conclusion, because the deed is voluntary, and there was no change of the possession.

It is admitted, there is no decision in the English books affirming this principle, and to my mind, this is a conclusive argument against its soundness, as it is impossible to suppose, that if the proposition be true, that the common law did not permit a transfer of the title to personal property, in any case, either absolutely or conditionally, without a change of the possession, that the books would not be full of cases illustrating the principle—it would indeed be found among the rudiments of the law.

Where there is an absolute sale of personal property, and no change of the possession, the law presumes it to be fraudulent, and this has been considered to be law ever since the decision of Twine's case. This presumption of law, rests upon the established course of dealing amongst men, and therefore when, after an absolute sale, the property is left with the vendor, it is, in the language of Lord Coke, "a sign of trust." But when the sale is not absolute, but conditional, and by the contract of the parties, the possession is to be retained by the vendor, for a stipulated time, or until the happening of a certain event, no such presumption arises, because there is nothing incongruous between the contract of the parties, and their conduct; and therefore if the possession is where, by the terms of the contract it should be, it is not a sign, or badge of fraud. This was determined in Edwards v. Harben, 2 Term, 587, and has been recognized as law from that day to the present, both in England and the United States; and has been repeatedly recognized by this court. Our registry act, which requires deeds of trust, and other conditional sales to be recorded, does not give them validity, but imposes a condition, to which they were not subject by the common law—registration—the object of which being notice merely, they are valid, though not registered, against all who have notice.

It appears to be conceded, that if this deed was made upon a valuable consideration, it would be valid, though the pos-

session had been retained by the grantor; but if the reten-
tion of the possession by the owner, is a badge, or sign of
fraud, it can make no difference, whether the deed was upon
sufficient consideration, or was purely voluntary.

The statute of the 13th Elizabeth, declaring fraudulent
conveyances void, in favor of creditors, and the 27th of E-
lizabeth, for the protection of purchasers, have been embodi-
ed in our statute of frauds, and it is supposed, that such a
conveyance as this, is embraced by the former statute, and
being voluntary, is in legal estimation fraudulent. A volun-
tary conveyance of property by one indebted at the time, is
doubtless by force of this statute fraudulent, and void as to
such creditors. There are also some cases, in which it has
been held, that such conveyances are void as to subsequent
creditors of the grantor, but the established doctrine at the
present day, both in England and the United States, appears
to be, that the statute applies only to creditors existing at the
time, and not to such as become so, after the execution of
the voluntary conveyance. This question is fully discussed,
in Wheaton v. Sexton, 8 Wheaton, 229, where this conclu-
sion is attained. See also Glaister v. Hewer, 8 Vesey, 200;
and Battersee v. Farrington, 1 Swanston, 106. What is said
by Lord Kenyon in Nunn v. Williamson, 8 Term, 529, has
reference to the facts of the case then before the court,
which was that of a debt existing at the time the convey-
ance was made, and was not intended to be applied to debts
subsequently created. The case of Otley v. Manning, 9
East, 58, also relied on, has not in my judgment any appli-
cation to this. That decision was made upon the 27th of
Elizabeth, in reference to a purchaser for valuable considera-
tion, after a voluntary conveyance, where it was held, in
conformity with the established current of the English de-
cisions, that such voluntary deed was fraudulent, and void,
against a subsequent purchaser, though he had notice of the
previous voluntary conveyance. The statute of the 27th
Elizabeth, applies only to voluntary conveyances of land, and
has not to my knowledge, ever been supposed to to be appli-
cable to conveyances of personal property.

But our statute of frauds furnishes conclusive proof, that
it was not intended, by the enactment of the provisions of

the 13th Elizabeth, to embrace such a case as this, as in the very same section, provision is made for the protection of subsequent purchasers, and creditors, when the title is not with the possession, by requiring the instrument by which it is evidenced, to be proved and recorded.

That such instruments are valid at common law, and not affected by the statute of 13th Elizabeth, unless the donor is indebted at the time, or unless they are fraudulent in fact, see Bohn v. Headley, 7 H. & J. 257; Hope v. Hutchings, 9 G. & J. 77; Cairns and wife v. Marley, 2 Yerger, 582; Johnson v. Mitchell, 1 Humph. 171; Banks v. Marksbury, 3 Litt. 278.

This deed being executed out of this State, is not embraced by our registry acts, unless it be the act of 1823, requiring all property "mortgaged, or under any other legal incumbrance," removed from any other State to this, to be registered within twelve months after such removal. Clay's Dig. 255, § 4. In Swift v. Fitzhugh, 9 Porter, 39, we held, that a postnuptial contract executed in Virginia, conveying slaves and other property in trust for the wife, was not a legal incumbrance, within this statute. The plain meaning of the statute is, property incumbered for the payment of debts, of which an incumbrance by way of mortgage is put as an example, and cannot reach a case, where the person in possession was entitled to an estate for life, with remainder to another. Besides, the deed was made in 1819, and the slaves brought to this State in 1820, or 1821, whilst the act in question, which was passed in 1823, expressly exempts from its operation, all mortgages, deeds of trust, or other legal incumbrances, existing at the time of the passage thereof.

From this it results, that as the deed was valid at common law, and was not required to be registered by any law of this State, a purchaser from the tenant of the life estate, became entitled only to the interest which he had in the slaves, and upon his death, the tenant in remainder, or his legal representatives were entitled to the slaves. The court therefore did not err in the charges given, or in those refused.

Judgments affirmed.

94

THE cause was re-argued at this term, on the petition of the plaintiff in error.

MANNING, for the plaintiff in error, enforced and re-asserted the positions previously taken by him, and especially insisted, that although the deed was made in Georgia, upon the property being brought into this State, it was affected by the statute of frauds, and became inoperative as against the creditors of the donor, for want of registration.

BYRD and HENLEY, contra.

COLLIER, C. J.—We concur in the opinion heretofore delivered by Judge Ormond, that the deed by Joshua to Thomas Hightower, is good as a gift, though the donor during the life of himself and wife reserved the enjoyment of the services of the slaves. Hope v. Hutchins, 9 G. & Johns. Rep. 77; Abbott v. Williams, 2 Brev. Rep. 38; Vernon v. Inabnit, Ib. 411; Hunt v. Davis, 3 Dev. & Bat. Rep. 42; Benton v. Pope, 5 Hump. R. 392.

It is however contended, that although the gift may have been good in Georgia, it became inoperative in this State when the slaves were removed here, as against the donor's creditors; because the deed was not registered according to the provisions of the second section of the statute of frauds. That section, so far as it is material to notice it, is as follows, viz: "If any conveyance be of goods and chattels, and be not on consideration deemed valuable in the law, it shall be taken to be fraudulent within this act; unless the same be by will, duly proved and recorded; or by deed in writing, acknowledged and proved." If the deed be of goods and chattels only, then it must be acknowledged or proved by one or more witnesses in the circuit court, or county court, wherein one of the parties lives, within twelve months after the execution thereof; or unless possession shall really and *bona fide* remain with the donee. And in like manner, where any loan of goods and chattels shall be pretended to have been made to any person, with whom, or those claiming under him, possession shall have remained by the space of three years, without demand made and pursued by due

course of law, on the part of the pretended lender; or where any reservation or limitation shall be pretended to have been made, of a use or property, by way of condition, reversion, remainder, or otherwise, in goods and chattels, the possession whereof shall have remained in another as aforesaid; the same shall be taken as to the creditors and purchasers, of the persons aforesaid, so remaining in possession, to be fraudulent within this act; and that the absolute property is with the possession; unless such loan, reservation or limitation of use or property, were declared by will or deed, in writing, proved and recorded as aforesaid." Clay's Dig. 254, § 2.

It is obvious from the terms of the act, that it was never intended to apply where a deed was executed in another State, and the property embraced by it was there in the possession of one of the parties, or some third person, without an intended removal. Here, in addition to the deed being executed abroad, while the property was there, the parties themselves were non-residents, so that it was impossible to register the deed upon proof or acknowledgment, " in the circuit court, or county court, wherein one of the parties lives, [lived] within twelve months after the execution thereof."

We have said, that the deed was operative as a gift at *common law*, and in the absence of proof to the contrary, it must be intended that the common law prevails in Georgia. If this be so, there is no principle that made the registration of the deed in that State, essential to the protection of the interest of the donee against the creditors of the donor.

In Catterlin v. Hardy, et al. 10 Ala. Rep. 514, a deed was made in North Carolina, in 1831, by which a father professed to loan to his son, and the wife of the latter, certain slaves for their joint lives, and the life of the survivor of them; and afterwards to go to the children, in absolute right. Held, that upon the removal of the slaves to this State, it was not necessary to register the deed, and that the remainder in favor of the children, was not an incumbrance on the estate of the son and daughter-in-law. This case might be regarded as an authority directly in point, if it appeared that the decision of the question noticed, was founded upon the construction of the second section of the statute of frauds; but

from the language employed, it is most probable that the attention of the court was only called to the act of 1823, "to prevent fraudulent conveyances." Clay's Dig. 255, § 4.

It is a settled principle, that the laws of one State will not be recognized by another, if they are repugnant to its policy, or the legal interests of its citizens. Story's Confl. of Laws, 32. Nor will a contract made in one State be enforced in another, if it is immoral or unjust, or injurious to the rights, interest or convenience of the State or its citizens. National comity will not be allowed to operate to the prejudice of the State which acknowledges it. Id. 203, 271.

If a contract is void by the statute of frauds, at the place where it is made, because it was not evidenced by writing, it is void every where; but if it was good where it was made, though not conformable to the laws of the State in which it is attempted to be enforced, it will be recognized as valid. Story's Confl. of Laws, 219.

In the gift by the father to his son, with a reservation of an estate for life, there was certainly nothing immoral or unjust, or injurious to this State or its citizens. Such at least is the inference from the case as presented by the record, and if the reverse is true, it should have been proved at the trial, and the charge of the court prayed upon the facts. If the legislation or judicial decisions of Georgia, were adverse to the validity of the gift, they should have been shown in the circuit court, as matters of proof. The transaction in Georgia, we have seen, is not obnoxious to our statute of frauds, although the parties and property afterwards removed to this State; and it would be an unwarrantable restriction of national comity to refuse to give it effect here. We know of no legal warrant for an extension of the policy of the statute to a deed executed abroad, between non-residents, in respect to property not within the State; especially if, at the time, it is not intended to be brought here. The objection then, that the deed in question was not registered, cannot prevail, so as to defeat the gift, even in favor of the creditors of the donor.