## GOLDING vs. GOLDING'S ADM'R.

1. An instrument, in form a deed, containing a clause of warranty, attested by two witnesses, and conveying realty and personalty by the words,"at my death I do hereby give and grant unto my son," *held* a deed, and not a will ; the evidence showing that it was delivered to the grantee, who was a cripple, on the day of its date, and that it was intended as a present provision for him, to induce him to continue to live with the grantor, his mother.
2. An administrator of a solvent estate may, in this State, maintain ejectment for the lands of his intestate.

ERROR to the Circuit Court of Russell.

Tried before the Hon. JOHN GILL SHORTER.

EJECTMENT by Bryant Duncan, as administrator of Catharine Golding, deceased, against William A. Golding, the plaintiff in error, to recover the possession of a tract of land containing eighty acres, as well as damages by way of mesne profits for its detention. The defendant claimed title through the plaintiff's intestate, under the following instrument of writing :

" The State of Alabama,   } Know all men by these pres-
     Russell County,      } ents, at my death, that I,
Catharine Golding, do hereby give and grant unto my son,

William A. Golding, my negro woman Silvey and her son Shade, which I believe to be worth about nine hundred dollars; also, eighty acres of land, worth about four hundred dollars, for which I hereby warrant and defend, from the balance of my heirs, executors, administrators and assigns. In witness whereof, I, the said Catharine Golding, have hereunto set my hand and seal, January 24th, 1852.

LEVI GOLDING, [Seal]        her

               CATHARINE X GOLDING."

MITCHELL GOLDING, [Seal.]      mark.

The defendant proved the execution and delivery of this instrument on the day of its date, by the subscribing witnesses, who further testified that it was executed under the following circumstances: William A. Golding, the grantee, is a cripple and the son of said Catharine; at the date of the instrument he was living with her, but, about that time and previously, he spoke of leaving her house, and going to live with a brother with whom he had formerly resided; on the day when the instrument was executed, his mother promised him that, if he would live with her until she died, she would give him an instrument which would secure to him at her death, if she died before he did, her land and negroes; the defendant assented to this proposition, and immediately drew up the instrument above set out, which his mother forthwith executed and delivered to him.

It was further proved, that the defendant did live with his mother until her death, which occurred on February 2d, 1852; that, at the time said instrument was executed, said Catharine was in her usual health, which was infirm; that she requested her son not to exhibit the instrument until after her death; that he did not exhibit it until the appraisement of the estate, at which he claimed the property, but showed the instrument to one person only, and he was a stranger to this suit; that it was not shown to the administrator until after the institution of this suit. Upon this proof, the defendant offered to read the instrument in evidence to the jury, but the plaintiff objected; the court sustained the objection, and the defendant excepted.

The plaintiff offered in evidence the record of his appointment as administrator of Catharine Golding, deceased; but defendant objected to its admission, because it did not show that plaintiff had given bond, or done any other qualifying act as

Golding v. Golding's Adm'r.

administrator. The objection was overruled, and the defendant excepted.

This being all the evidence in the cause, the court charged the jury, that the evidence showed sufficient authority in the plaintiff to sue in the character of administrator of Catharine Golding; that, as such administrator, he had *eight* months within which to receive claims against the estate, and if he instituted this suit within that time, and his intestate had title to the land, he had the right to recover of the defendant the possession of the land, even though it did not appear affirmatively that there were any debts due by said estate; and that, if they found a verdict for the plaintiff, they must assess the value of the rents and profits against the defendant from the service of the writ; to which charge the defendant excepted.

The errors assigned are : first, the ruling of the court in excluding said instrument from the jury ; second, the overruling of defendant's objection to the record showing plaintiff's appointment as administrator ; and, thirdly, the charge given.

HILLIARD & THORINGTON, for plaintiff in error :

1. The court erred in excluding the instrument offered from the jury. It was a deed: it conveyed to the grantee an actual interest and an immediate estate, only reserving to the grantor the enjoyment of the property during her life : it took effect immediately, and not *in futuro* ; the delivery perfected it, and passed the title to the grantee.—Adams v. Broughton, 13 Ala. 731 ; McRae v. Pegues, 4 *ib.* 158 ; Simmons v. Augustin, 3 Porter 69, 94 ; Harkins v. Coalter, 2 *ib.* 263 ; Florida Rep. 63, 88 ; 7 Har. & J. 257 ; 9 Gill & J. 77 ; 1 Bailey 100 ; Williams v. Ward, decided by the Supreme Court of Tennessee, at April term, 1853, and reported in Law Magazine for January, 1854.

2. The record of the plaintiff's appointment as administrator ought not to have been admitted, as it did not show that he had given bond, or even qualified.

3. The charge is erroneous. An administrator is not entitled to the lands : they pass to the heir. They are, of course, subject to the payment of debts; but the administrator could not obtain possession of them, until he had taken the regular steps in the Probate Court, for the purpose of collecting the

rents and profits.——Parsons' Com. 154; Chighizola v. Le Baron, 21 Ala. 406.

GEO. D. HOOPER and BELSER & RICE, *contra :*

The instrument excluded from the jury was testamentary in its character. True, it was delivered; the beneficiary was in life, and might have been the recipient of a deed. But the expressed view of the testatrix was, that it should only operate in the uncertain event of her dying first: there still remained the *locus penitentiæ.* Then again, on the face of the instrument, not only the possession and use of the property did not pass till death, but the property itself did not pass till death. The ruling of the court is sustained by the following authorities: Shepherd v. Nabors, 6 Ala. 632; Dunn and Wife v. Bank of Mobile, 2 *ib.* 153; Austin v. Young, 2 Kelly 41; Walker v. Jones, 23 Ala. 448.

The record containing the order of plaintiff's appointment as administrator, shows that he "had duly qualified."

As to the right of an administrator to maintain ejectment, see Masterton v. Girard's Heirs, 10 Ala. 60; Caruthers v. Bailey, 3 Kelly 111.

LIGON, J.—The rights of the parties in this case depend, mainly, upon the construction which the law puts upon the instrument of writing made by Catharine Golding to William A. Golding, which the court below excluded from the jury.

If that instrument is a deed, by which Mrs. Golding conveys to her son the premises in controversy, to be held by him in fee, with the reservation of a life estate to herself, and its terms are such as to pass to him a present interest in the lands in controversy, with the entire estate at her death, then, the court erred in excluding it from the jury; but, if, as it is contended for the administrator, the paper is wholly testamentary in its character, it cannot pass real estate, because there are but two subscribing witnesses to it, when our statute requires three to a will of realty.

In construing this instrument, it must be borne in mind, that there is no controversy here with the creditors of Mrs. Golding, or a subsequent purchaser from her for valuable

consideration without notice, or even a voluntary grantee. It is a contest between her voluntary donee and her personal representative, or, in other words, between the parties to the instrument *exclusively*.

The instrument is, in form, *a conveyance* of the land in controversy, and the operative words, "do hereby give and grant," as well as the clause of warranty, which is in these words, "I hereby warrant and defend, from the balance of my heirs, executors, administrators and assigns, and all other claims whatever, unto the said William A. Golding," &c., are the words of a deed and covenant, and with the exception of "give," are never found in a will. The phrase, "at my death," does not appear to have been intended to operate on the words of gift or grant, or upon the estate intended to be granted, but most naturally refers to and limits the time when the grantee shall enter upon the enjoyment of the estate granted. It presents, then, the common case of a gift by deed of lands, with the reservation of a life estate to the donor.

In all such cases, the fee presently passes to the grantee, upon the delivery of the deed, while the life estate, carved out of it and reserved, remains in the donor : on the death of the donor, the entire estate in the premises immediately vests in the grantee.

Instruments containing, in effect, the words of the one under consideration, have been frequently passed upon in this court and others, and have been almost invariably held to be deeds. In those cases in which they have been held to be testamentary papers, they have been so held to give them effect, and not to defeat their operation. If, as deeds, the law interposes insurmountable obstacles to carrying out the evident intention of the grantor, then they have been held to be testamentary, if in that character the courts could give effect to such intention ; on the contrary, if, by investing them with a testamentary character, the intention will be defeated, they will be held to be deeds to give them effect. To hold that this instrument is a will, would be wholly to defeat the intention of Mrs. Golding as to the real estate ; for it could not pass lands, as it wants the statutory number of witnesses.

In Dunn and Wife v. Bank of Mobile *et al.*, 2 Ala. 152, the instrument was in form a deed, and called such ; yet, as its purpose seemed to be testamentary, and the evident design and intention of the grantor could not be carried out unless it were established as a will, this court declared it to be such, and thus gave it effect.

In Shepherd *et al.* v. Nabors, 6 Ala. 634, the instrument was in form and name a deed; but the court invested it with a testamentary character, to carry out the evident intentions of the donor. It would swell this opinion to too great length to enumerate all the cases of a similar character with which the books abound.

On the other hand, in the cases of Simmons v. Augustin, 8 Porter 69, and Adams v. Broughton, 13 Ala. 731, in which the instruments were very similar to the one in this case, they were held to be deeds, to give them effect, and to carry out the intentions of the grantors, which would have been otherwise defeated. To the same effect are the cases of Caines and Wife v. Marley, 2 Yerger 584; Same v. Jones, 5 *ib.* 254 ; and Williams v. Ward, decided by the Supreme Court of Tennessee at April term, 1853, and reported in the Law Magazine for 1854. It is worthy of remark, that, in the first of these cases, the court at first held the equivocal instrument to be a will; but, upon reconsideration, it changed its opinion, and ruled it to be a deed, in order to carry out the intentions of the maker.

In Horne's Ex'rs v. Gartman, 1 Florida 63, which is quoted approvingly, and relied upon by this court in the case of Adams v. Broughton, *supra*, the instrument contained the words both of a will and a deed, inartificially thrown together. There was also a will, in due form, revoking the instrument, and giving the slaves conveyed by it to other persons. The executors sued Gartman for them ; but the court held the instrument to be a deed, and consequently irrevocable, remarking, that " if it was the intention of the grantor it should operate as a deed, and it is not legally impossible it shall so operate, his intention should prevail." The court held it to be a deed, to give it effect, and to take it out of the clause of revocation contained in the will of the grantor, which would otherwise have defeated it.

Upon a review of all the cases, our conclusion is, that where an instrument is rendered equivocal in its character by being inartificially drawn, and its execution is perfected by delivery, the courts, to prevent the intention of the maker from being defeated, and to give it effect, will hold the instrument to be a deed. But we have been unable to find any case, in which the inartificial [arrangement of the words of the instrument has been relied upon or permitted to defeat that intention, and render the instrument inoperative and nugatory.

Were we to hold this instrument to be a will, we should not only run counter to this settled and well established rule, but defeat the humane provision which an aged mother has made for an unfortunate and crippled son.

The proof of the subscribing witnesses to this instrument, leaves us in no doubt as to the intention of the parties to it, and fully explains any latent ambiguity which may have supervened by the use of the words "at my death," as they were used in the instrument itself. Concurrently with the making of the instrument, the donor declared that her intention was *to secure* the property to her son, and the consideration was that her son was to remain with her as long as she lived. It is evident that Mrs. Golding, at the time the deed was signed, had not the least idea of making a will, or any instrument of a purely testamentary character. Her purpose, as avowed by herself, was, *at that time to secure* the property to her son, if he outlived her. A will, which she could revoke at any subsequent time, at her own pleasure, would not carry out this intention ; but a deed, signed and delivered, could and would. Yet, in that deed it was necessary to reserve her life interest in the property, by the use of words which would effect this object, and hence the words "at my death" occupy a prominent place in the instrument, while the body of the paper under consideration contains every word necessary to make a good deed, without the use of a single one which is peculiar to a will. It is true, if the words "at my death" had been differently placed, the meaning of the grantor would have been more pointedly and unequivocally expressed; but mere awkwardness in the arrangement of words in a deed, which does not make it contradict

the avowed intention of the grantor at the time it was executed, will not be allowed to defeat that intention altogether. In such cases, if the words of the instrument, by a reasonable construction of them, can be made to carry out the expressed intention of the maker, the courts will not hesitate to place that construction upon them.

The operative words of the instrument under consideration, as we have already said, are those of a deed, and these must be allowed to fix its character. These agree with the oral proof in the case, as to the intentions of Mrs. Golding, and stamp the paper unmistakeably with the character and properties of a deed.

The only remaining question which we deem it necessary to pass upon, is, as to the right of an administrator, in this State, to bring ejectment against an adve..re holder of the lands of his intestate. The action of ejectment is a possessory action, and may be brought by any person against whom the possession of lands is unlawfully held by another, especially in cases in which the summary proceedings by forcible entry and detainer, or of unlawful detainer, will not lie.— Under our statute, the administrator of a solvent estate is entitled to the rents and profits of the real estate of his intestate, until distribution is made. It has been also held, that he is entitled to the rents in arrear at the death of his intestate.—Harkins v. Pope, 10 Ala. 493. Being thus entitled to all the rents of the premises, the administrator must, of necessity, be entitled to all the needful remedies to enforce his rights; for, when the Legislature conferred the right to the rents accruing on the real estate of the intestate on him, it gave him, by implication, every other right or power necessary to render this right effectual. Among these are included the right to the possession of the lands, and the right of action to recover that possession, if unlawfully withheld from him. The rule is different where the estate is insolvent, as may be seen by reference to the case of Long et al. v. McDougald's Adm'r, decided at the last term. The estate of Mrs. Golding does not appear to be insolvent, and her administrator might well maintain ejectment in a proper case.

There was, therefore, no error in this part of the ruling of

the court below; but for the error in excluding the deed from the jury, the judgment must be reversed, and the cause remanded.