Wilks's adm'r v. Greer et al.

---

## WILKS'S ADM'R v. GREER ET AL.

1. A father executed a deed, in consideration of natural love and affection, by which he conveyed to each of his two daughters a female slave, reserving the use of the slaves to himself for life, and if his wife survived, to her use for life, then to his daughters forever, which deed was duly recorded and delivered. *Held,* that the deed vested a title to the slaves in the daughters from its date, and that in the absence of proof to the contrary, the legal intendment was, that it was an advancement.

2. That if the daughters sought a distributive share in the remainder of the estate of their father, who died intestate, they should bring the slaves into *hotchpot,* and that the value of the slaves at the time they were delivered to them, was the amount to be brought into the estate.

3. That the children of the female slaves, born during the life estate of the father and his wife, belonged to the daughters. That the rule which gave the increase of animals to the temporary proprietor, did not, on account of the peculiar nature of slave property, apply to them.

4. That the value of the children of the slaves, born after the death of the donor, and whilst the mother was in the possession of the widow of donor, should also be brought into hotchpot with the mother, and their valuation should have reference to the time of their delivery to the daughters.

Error to the Orphans' Court of Greene.

THIS was a proceeding in the orphans' court of Greene county, upon a final settlement by the plaintiff in error, as administrator of the estate of Francis Wilks, deceased. It appears from a bill of exceptions, that the intestate, on the 29th day of September, 1825, being possessed of two negro slaves, Cecily and Milley, by deed of that date, in consideration of natural love and affection, &c., which he bore for his two daughters, Mary T. and Martha A. Wilks, conveyed the girl Cecily to Mary, and Milley to his daughter Martha, but provides in the deed, that he is to have the use of said slaves during his life, and if his wife, Mary Wilks, should survive him, she was to have the use of them for her life, and after her death, then to said daughters, their heirs and assigns forever. Which deed warranted the title to the donees, and was duly recorded in the clerk's office of Greene county. The two slaves remained in the possession of Francis Wilks from the date of the deed until his death, in 1834. His wife, Mary, surviving him, they remained with her until her death, which was in 1843. After the date of the deed, and while the slaves were in the possession of the said Francis Wilks, the girl Cecily had children, which, after his death, were divided among his children, without regard to the deed. After his death, and while said slave Cecily was in the possession of the widow, she had three children, which, at the date of the settlement, were in possession of Martha, the donee, and her husband Stewart. The plaintiff in error, who was also one of the three children of Francis Wilks, insisted upon the final settlement, that the said Cecily and her children as well as the girl Milley, should be regarded as assets of the estate of said Francis for distribution, and that Stewart and his wife Martha, who had administered upon the estate of the widow, Mary Wilks, should account for the hire of said

slaves, after the death of Francis Wilks. The court refused so to consider said slaves, but determined that they passed under the deed as an advancement made to the two daughters. That they should bring them (Cecily and Milley) into *hotchpot*, and be charged with the value of the slaves at the date of the gift, less the value of the life estate of the donor and his wife. The value of each slave being ascertained to have been at that time, $300, was reduced by the incumbrance to $150, and this sum was charged in the settlement to the donees, and the increase of the slave Cecily was excluded. The decisions of the orphans' court, in refusing to adjudge the five slaves subject to distribution, and in estimating the value of Cecily and Milley, are assigned for error in this court.

W. F. PIERCE, for the plaintiff in error, insisted the judgment was erroneous—

1. Because the hire of the slaves was not accounted for by Stewart and his wife, while the slaves were in the possession of the widow, Mary Wilks.

2. Because the five slaves were not brought into the distribution.

3. Because defendants, Stewart and his wife Martha, and Greer and his wife Mary, were not charged with the value of the slaves at the time of the gift, regardless of the incumbrance.

4. Because they were not charged with the value of all the slaves at the time they received them. He cited Clay's Dig. 197, § 26.

J. B. CLARKE, for defendant.

1. The delivery of the deed of gift was equivalent to a delivery of the property, and vested the property, as against the donor, and those claiming under him, in the donees, Mrs. Greer and Mrs. Stewart, then the Misses Wilks, the daughters of the donor. McCutchen v. McCutchen, 9 Por. 649; McRae v. Pegues, 4 Ala. 158.

2. The delivery of the deed being equivalent to the delivery of the slaves to the donees, the law presumes it to have taken place the day it bears date, which is the proper time to

fix the value of the property. 1 Pirtle's Dig. 252, § 18; 5 H. &. Johns. 467.

3. An estate can be given by way of advancement, as well in a remainder or reversion, as one in which the donee has an immediate enjoyment, and when that is the case, and the donee desires to bring the same into *hotchpot* he is only to be charged with the remainder, or reversion, at the time the gift was made, estimating the incumbrance thereon. 8 Ves. 63; 2 P. Wm. 442; 3 Gill & John. 448.

4. Where a gift is made of a female slave, reserving the use thereof to the donor, during the life of himself and wife, the issue of said slave born after the gift, belongs to the donee, not to the donor or his representative. Tims v. Potter, 1 Hayw. 234; Erwin v. Kilpatrick, 3 Hawks' 456; Williams v. Stonestreet, 3 Rand. 559; Hudson *v.* Hudson, Ib. 117; 2 Dess. 139; Warfield v. Warfield, 5 Har. & Johns. 467; 4 Bouv. Bac. Ab. 98; 2 Hayw. 366; 6 Iredell's Law Rep. 4; 6 Munf. 368; 2 Tate's Dig. 112; 5 B. Monroe, 426.

5. If the deed of gift is to be considered as a testamentary disposition, then the property thereby disposed of, would not be subject to be brought into hotchpot, to enable the donees to recover a distributive share of the estate not so bequeathed. Clay's Dig. 197, § 25, 26; Ib. 597, § 7; 2 Wms. on Ex'rs, 918-19; Walton v. Walton, 14 Vesey, 324; 2 Dess. 139.

6. If the deed of gift on its face, with the attending circumstances clearly show, that the slaves were intended as gifts, and not by way of advancement, the donees cannot be required to bring them into the distribution with the rest of the estate, to be entitled to a distribution thereof. 8 Ala. Rep. 414.

CHILTON, J.—The first question which arises in this case for our consideration, is, whether the estate created by the deed from Francis Wilks to his daughters, Martha Stewart and Mary Greer, is to be considered as a gift purely, or as an advancement, or whether the deed should be construed as a testamentary paper? An advancement is defined to be, that which is given by a father to a child, or presump-

tive heir, by anticipation of what he may inherit.   17 Mass. Rep. 358; 4 S. & R. 333; 11 Johns. R. 91.   In the Distributees of Mitchell v. Mitchell, adm'r, 8 Ala. 414, the court say, when either money or property is advanced to a child, it will *prima facie* be an *advancement* under the statute, and must be brought into *hotchpot.*   This legal intendment, which arises in this case as clearly as in the case last cited, must be repelled by those claiming the advance which has not been done in the case before us.   The deed executed by Francis Wilks to his two daughters, in our opinion, vested the right to the slaves conveyed, upon its delivery, and operates as a conveyance *in praesenti*, and not as a testamentary paper.   It is not denied but that the instrument is, in form, a deed, but it is insisted, that regardless of its form, if it be testamentary in its character—that is, amounts to a disposition of the slaves, to take effect after the death of the donor, it may be proved as a will, and does not operate as a deed. Most of the cases to which we have been referred by the counsel, where instruments somewhat similar to the one in question, have been held to operate as wills, are cases in which such construction was necessary to give effect to the object and intention of the donor, and where the instrument could not operate as a deed, and could be sustained only as an executory devise.

The case before us is unlike the case of Dunn and wife v. The Bank of Mobile et al., 2 Ala. Rep. 152, and Sheppard et al v. Nabors, 6 Ala. Rep. 631.   In each of those cases, the instruments could not take effect as deeds, vesting a *present* interest or title in the donees; for in the case first named, the deed was made to Mrs. Dunn and to her children, then in life, *and to those thereafter to be born*, and was to take effect after the death of the donor, and in the last case, the donees were not *in esse* at the time of the gift, so that they could take.   It is manifest then, as there could have been no delivery either actual or constructive of the property, the gifts could not take effect as deeds, and the court prevents a failure of the interest by holding them good as testamentary papers.

Such is not the situation of the parties with respect to the

56

property in the present case. There is no reason why this deed cannot take effect *as a deed*, and there is not in our judgment any rule, either of law or public policy, which forbids its maintenance as such. No injury to creditors or purchasers can be sustained, for if the deed be executed since the passage of the registry act, and made in this state, it is required to be recorded, and full information may be had by an examination of the records of the county. As to its being a source of domestic frauds, it is a sufficient answer, that courts of equity have ample power to relieve against such frauds, and that were such reservation disallowed, the importunate child who is thus to be the preferred object of a parent's bounty, would only have to use more adroitness to procure the execution of the deed without such reservation.

This deed has been regularly recorded. It specifies the parties who are to take by it, and who were capable at the time of its delivery, of taking a vested interest in the estate. It is signed, sealed and delivered as a deed, and contains a covenant of warranty against the grantor and his heirs, &c. The instrument, by its express terms, vests the *title* to the slaves in the daughters, immediately upon its delivery, but reserves for the use of the donor and his wife during their respective lives, the possession of said slaves. The doctrine of the common law, that there could be no limitation over, after a life estate in personal chattels, has long since been abandoned. To say nothing of the statutes in most of the States of the American Union, which seem to recognize such limitations as valid, we think the doctrine, so far as it can derive a sanction from judicial decision, is too firmly established now to be called in question. See Child v. Bailie, Cro. Jac. 459; 2 Kent's Com. 351-2, where the authorities are collated. And many cases show, that if a loss is likely to accrue to the party ultimately entitled to possession from waste, removal and the like, chancery will interfere, and require security of the party in possession. 3 Hen. & Munf. 503; 2 McCord's Ch. Rep. 32, 143. Further, as to deeds with reservations, see Jarman on Wills, 11, 13, note e. This deed is not ambulatory, or revocable, as a will, and cannot operate as such. It vested the property in the daughter, but the right to the possession was postponed until after the death of

the donor and his wife. The following cases show, that effect has been given to instruments as deeds, when the possession was postponed: Banks's adm'r v. Marksberry, 3 Litt. 275; McCutchen adm'r v. McCutchen, 9 Por. 650; Sewell v. Glidden, 1 Ala. R. 52; Myers v. Peek's adm'r, 2 Ib. 648; Oden v. Stubblefield, Ib. 684; McRae, adm'r, v. Pegues, 4 Ib. 158. Considering the gift as an advance to the daughters, the statute (Clay's Dig. 197, § 25,) requires them to bring the property, or its value, into *hotchpot* before they can share "with the other parceners," in a partition of the estate. Bohn v. Headley, 7 Har. & John. R. 257.

2. At what time shall the value of the property so advanced, be estimated? The plaintiff in error insists, that its value at the time of the termination of the life estate of Mrs. Mary Wilks, should be brought into the estate. The statute is in these words, "and in all cases, the value of the property, *at the time it was delivered*, shall be fixed by said judge or jury, as the case may be, and the value so fixed, or the value agreed upon by the parties, shall be deducted from the share of such heir, or heirs." The language of this statute is clear and unambiguous, and in my opinion admits of no other construction than that the heirs advanced shall be chargeable with the value of the property at the time they come to the actual possession of it. The object of the statute was the equal distribution of the property of the father among all his children, and to exclude from any participation in the remainder of his estate, such of his children as refused to bring into the common fund, the portions they had actually received from him. Suppose the slaves conveyed to the daughters had died the day after the execution, registration and delivery of this deed, then, according to the construction contended for by the defendants, they would have been chargeable with the value of the slaves, deducting the value of the incumbrance, but they are charged for that which they have never received, and can never enjoy. In such case they are not equal with the other child, having received less of the father's estate than he, and thus is introduced the very inequality which the statute was designed to remedy.

I do not wish to be understood as holding, that there may not be estates created in remainder, with the value of which

the heir shall be charged, or that future contingent provisions to take effect in a reasonable time, may not be considered advancements *pro tanto*. The case at bar does not call for an opinion upon these points, and the statute is silent as regards them. In this case the property vests in possession on the death of Mary Wilks, the widow of the intestate. In other words, the right vested at the date of the deed; the property was delivered at the death of Mrs. Wilks. Here then is a *certain* interest capable of valuation. Shall we depart from this certainty, and seek in the incertitude of conjecture merely, the value of a slave after an estate for two lives shall have determined? Suppose, instead of a slave, the father should have given land, and pending his occupation for life should, out of his estate, have increased the value ten fold by improvements, could it be successfully maintained that such enhanced value should not be charged to the donee? To hold otherwise, it seems to me would be a manifest violation of the statute, predicated as it is "on the most just rule of equity, *equality*." The view here taken is not opposed by the cases referred to by defendant's counsel. In Kircudbright v. Kircudbright, 8 Ves. 51, and Edwards v. Freeman, 2 Pr. Wms. 435, also State, use of Wilson and wife, v. Jemeson, 3 Gill & Johns. 442, the courts hold, that an *annuity*, a portion of which has been received by the son, or a trust created by the intestate charged upon land to raise a portion for his daughter upon her arriving at the age of eighteen years, or her marriage, or, as in the last case named, a remainder in lands which had vested, or in slaves, should be valued and brought into hotchpot. They decide nothing as to the time to which the valuation should be referred. The case of Warfield v. Warfield, 5 Har. & Johns. Rep. 459, sustains the position, that the property should be estimated according to its value *at the time it was received*.

3. The remaining questions, whether the three children of the girl Cecily, born while she was in the possession of Mrs. Mary Wilks, are to be considered the property of Francis Wilks, the intestate, or of Mary Wilks's estate, or whether they pass under the gift to the daughters; and if so, whether they are to be considered as a portion of the advancement to them, are not free from difficulty. The following cases show

that the courts of Maryland hold, the issue of the slaves, born pending the life estate, go to the tenant for life. Scott v. Dobson, 1 Har. & McHenry's Rep. 160; Somerville v. Johnson, Ib. 160; Ib. 352; Standiford v. Amos, 1 Har. & John. Rep. 526; Hamilton v. Cragg, 6 Har. & Johns. Rep. 18; Bohn v. Headley, 7 Ib. 257. These cases appear to be based upon the reasoning, that it was necessary to protect the issue, that it should go to the person to whom the use was limited. That it would be a reasonable compensation for the expenses of maintenance, and for the time lost by the parent. Further, that as a bounty was intended by the limitation of a use, if the issue should go with the remainder, there might happen a loss instead of a benefit to the person entitled to the use. But, in Somerville v. Johnson, 1 Har. & McH. Rep. 160, the court intimate that the reasoning above referred to, might be refuted, and adhere to the decision of Scott v. Dobson, because it had settled a rule, under which rights had vested, recurring to the saying of Lord Hardwicke, from Horace, "*utilitas justi prope mater et aequi.*" So, also in New York, the progeny born during the term is likened to the increase of animals, which belong to the temporary proprietor. Concklin v. Haven, 12 Johns. Rep. 314. Slaves, though regarded as property by our law, are nevertheless property of a peculiar character. While, by the regulations and laws of society, they are bound to servitude, at the same time, they share the protection of those laws. They are entitled to trial by jury for offences above petit larceny. An assault and battery upon them is indictable. The master is bound to feed and clothe them, and inhibited, under a heavy penalty, from inflicting cruel or unusual punishment. Thus, we see they are invested with many of the attributes of persons. In short, the law regards them, and treats them, as human beings, deprived, doubtless for wise purposes, of their freedom. The maxim of the common law, "*partus sequitur ventrem*," applies to them, and in our opinion the rule which applies to animals has no application to them. To this effect are the decisions of North Carolina and Kentucky. See Erwin et al. v. Kilpatrick et al. 3 Hawkes's Rep. 456; Glascow v. Flowers, 1 Hayw. Rep. 233; Martin's N. C. Rep. 22; Jones v. Jones, C. & N. Rep. 330; Miller v. McClellan, 7 Monroe's

Rep. 232; Slave Ned v. Beal, 2 Bibb, 298; 5 B. Monroe, 426; 6 Munf. 368; 6 Iredell's Law Rep. 366; 4 Bou. Bac. Ab. 98; Preston v. McGaughey, Cook's C. C. U. S. Rep. 113; Creag v. Eustis, 1 Cooke's Rep. 381. As to the expenses of raising the children, it is a sufficient answer to say, if the use is a gift, the donee is not bound to accept it, or if the party purchase a temporary proprietorship in the slaves, he may by his contract provide against such contingencies. We think the children of Cecily follow the mother, and belong to the daughters of Francis Wilks.

4. The daughter takes the children of the female slave under the deed. They vest in possession cotemporaneously with the mother, and if we have correctly laid down the law above, the deed operates as though the father had given *Cecily, and her increase,* to his daughter Martha Stewart; the delivery of the possession to be postponed until after the death of himself and wife. The statute requiring the value of the property *at the time of its delivery* to be brought into the estate, and the children of Cecily being a portion of the property so delivered, and the right to which vested under the deed, it follows that their value, as well as the value of the mother, should have been brought into hotchpot by the husband of Martha Stewart, if he desired to participate in the distribution of the remainder of the intestate's estate. He has the right, however, to make his election to keep the negro woman and children, and not share with the other distributees.

The decree of the orphans' court, being contrary to the views above expressed, is reversed, and the cause remanded.