## SUMMERLIN, Adm'r, &c. v. GIBSON, et als.

1. A voluntary deed for slaves, delivered to the donees, but reserving to the donor a life estate in them, operated as a present gift, and vests the title immediately in the donees.

Error to the Chancery Court of the 19th District. Before the Hon. David G. Ligon, Chancellor.

The bill in this case was filed by plaintiff, as administrator, &c., of one Robert S. Carson, against the defendants in

error, to set aside a deed of gift, absolute on its face, for certain slaves, executed by said Carson, in his life-time, to said defendants, and for the delivery of said slaves to him to be administered, &c. The facts, on which the relief is sought, the answers of defendants, and the testimony read on the hearing, are sufficiently set out in the opinion of the court.

The chancellor dismissed the bill, and it is now assigned as error.

Evans and Boling, for plaintiff.

Although this instrument be in the form of a deed of gift, and called such, still its purpose is testamentaty. It is only to be consummated by death, and is not to operate during life. It might be probated as a will. Dunn and wife et al. v. Bank of Mobile, et al., 2 Ala. R. 152 ; Lovelass on Wills, 317 ; top page 170, to be found in 25 Law Library ; Henry v. Ballard, 2 Caro. Law Repos. 595 : Lyles v. Lyles, 2 Nott & McCord's Rep. 531 ; Milledge v. Lamar, 4 Dess. Rep. 617 ; 10 Bacon's Abr. 480.

If necessary to effectuate the intention of the donor, such deed may be regarded as a testamentary paper, and operate as such. 2 Ala. Rep. *supra*, and authorities cited. See also, the opinion of the court in this case ; Gibson et al. v. Carson, adm'r, 3 Ala. Rep. 421 : 1 Eq. Dig. 408, § 42.

Hunter, contra.

I. No surprise is shown, such as is necessary to set aside a deed ; on the contrary, it is shown by the proof, that Carson did precisely, what he intended. The case made by the present testimony differs from that of Gibson v. Carson's administrator. 3 Ala. Rep. 421, in this—1. Minter proves that Carson regarded the papers executed by him, as deeds of gift; and not wills, after the commencement of his former suit. 2. The expression "will" is fully explained by Burns and West. 3. He was cautioned by Gibson, and money paid. 4. Carson's shrewdness proved, even when drunk, and capacity to understand the difference between a will and a deed. 5. Did not say it was in place of a will. 6. Reason of making his mark different, shown. 7. Long contemplation of doing what he did, proved. 8. Not one expression

proved, showing that he did not understand the force and na-- ture of deeds. 1 Story's Eq. Pl: 261 § 251 ; ib. 133, note 5. 9. The force of the old testimony is completely broken by the explanations now given by those witnesses, and two new witnesses prove beyond question that he never regarded the deeds as revocable, or in the nature of a will.

II. Statute of limitation and staleness of the demand. This point is regarded as entitled to much force. Johnson v. Johnson, 5 Ala. Rep. 90.

III. Proper parties defendant not made. Relief is sought against the estate of Thomas Gibson, deceased ; and his ad- ministrator should be a party.

CHILTON; J.—The law as applicable to this case, was settled by this court, in the case of Gibson et al. v. Carson, 3 Ala. Rep, 421. The bill in that case was filed by the grantor in the deed, to Mrs. Gibson and her children, to set it aside for fraud in obtaining it. The proof failed to make out the fraud complained of, but the court was of opinion that the facts and circumstances *then* in proof, showed a case of surprise, which would authorize the setting aside the deed. The bill however, not being adapted to the proof, was dis- missed without prejudice.

After the death of Carson, and the marriage of his widow with Summerlin, the complainant, this bill is filed by him to recover from the children of Gibson, and the husband of one of them, the slaves which are conveyed by the deed, the complainant being the administrator of Carson's estate.

The present bill insists that the deed was not only obtain- ed by over persuasion and fraud, but was intended to operate as a testamenrary paper, to take effect only after the death of Carson—that it was revocable at his pleasure, and that he did revoke it by making a subsequent will, bequeathing the slaves to the wife of complainant, Summerlin, and her chil- dren.

The answers admit the execution of the deed. and deny that it was improperly obtained, or intended to operate other- wise than as a deed of gift.

The only question for us to determine is, whether the deed

is to be considered a testamentary paper, and revoked by the subsequent will, or a conveyance irrevocable in its character.

Since the case was in this court upon the bill of Carson, several additional witnesses have been examined, and the testimony now before us, places a very different aspect upon the case from that which it bore when then here. Let us briefly recur to the proof.

Minter proves, that after Carson had commenced the former suit, he told the witness he had executed a deed of gift for the slaves in controversy, and that he had also executed a similar deed for the land to Robert and Matthew Gibson. That he never would have called for the deeds, but the transaction impaired his credit. That Carson designated the instrument as a *deed of gift*.

Burns, who is one of the subscribing witnesses to the deed, and who had been examined in the previous suit, does not now recollect that Carson, at the time of executing the deed, used the word ' will;' if he did, that he used it as synonymous with wish or desire, and not to designate the instrument as a will or testamentary paper.

West, the other subscribing witness and Burns, both prove that Carson said nothing indicating a desire or meaning on his part, that the deed should operate as a will. That the deed was read to Carson, who was sober, and in the enjoyment of his reason, and Gibson cautioned him to be satisfied with it before signing it, that he might not regret it thereafter; that Carson replied, " it was just as he wished it, or willed it, or words to that effect." West proves that Carson remarked at the time of executing the deed, that he had intended, for a long time, to convey his property to his grandchildren, not because he was in debt, but for the natural love and affection he had for them. The witnesses further prove, that after the deed was executed and delivered by Carson to Gibson, Carson observed to Gibson, " you are not to trouble this property during my life-time ;" to which the latter replied, " certainly not."

It further appears, by the declarations of Carson, made cotemporaneously with the execution of the deed, " that his (Carson's) wife had, for a long time, been persuading him to

execute a conveyance similar to the one he was then about to execute ; that he had then got his own consent ; that Mrs. Gibson was all the child he had or expected to have ; that it would save him the trouble of making a will," &c.

It is further shown, that Gibson did not use any improper influence over Carson to induce him to execute the conveyance, but in the language of the witnesses, " his influence was used to put the matter fairly before the mind of the old man, so as to prevent him from doing any thing that he might afterwards regret."

The witnesses further state, that Carson, when intoxicated, would not trade,—that when sober, he was a tolerably shrewd man, and at the time he made the deed to Mrs. Carson and the children, knew very well what he was doing.

There can be no question, however, that it was the understanding at the time, that Carson should not be disturbed in the enjoyment of this property during his life, and we will consider the deed, as though this provision had been inserted in it.

Can such an instrument take effect as a deed ? Several decisions of this court, we think, very clearly show that it becomes operative as a conveyance *in praesenti*, so as to vest the title in the donee and her children, although the enjoyment of the property may be postponed until after the death of the donor. In Wilkes's adm'r v. Greer et al. 14 Ala. Rep. 437, the donor, by deed, conveyed property (slaves) to his two daughters, providing in the deed, that he was to have the use of them during his life, and if his wife survived him, she was to retain them during her life, then to the daughters, their heirs, &c. Held, that the instrument operated as a deed, vesting the title, but postponing the possession, of the property. So also, in Adams v. Broughton, adm'r, 13 Ala. Rep. 731, it was held, that a voluntary deed, delivered to the grantee, conveying to him slaves, but reserving to the grantor a life estate, is operative at common law against purchasers, and subsequent creditors of the grantor, and is also valid as between the grantee, and the representatives of the grantor, notwithstanding his estate may be insolvent, and the grantor died in possession of the slaves. See also Jarman on Wills, 11, 13, n. e.; 3 Litt. Rep. 275; 9 Por. Rep. 650; 1 Ala. R.

52; 2 Ib. 648; Ib. 684; 4 Ib. 158; 7 Har. & Johns. Rep. 257; 2 Yerg. Rep. 582; 9 Gill & Johns. Rep. 77.

In giving the plaintiffs in error the benefit of the proviso, that the grantor was to retain the property during life, we do not wish to be considered as expressing any opinion upon the point, whether the proof showing the existence of such provision in the gift, was legitimate, and whether such contemporaneous understanding, was not merged in the written evidence which the grantor gave of his intention, viz., the deed which he executed and delivered. But we have considered the deed with this provision, merely to show that, granting all the donor insisted upon at the time, and shortly after its execution, the deed is valid as a gift, and not ambulatory as a will.

We may conclude this opinion, by remarking, that there is no evidence of any fraud or imposition, or undue influence of any description, practiced upon, or exercised over the grantor, previous to, or at the time of the execution and delivery of this deed.

That the father of the donees, some eight years after the execution of the deed, desired its registration should be kept a secret, cannot affect their title. The expressions used by the witnesses, when the case was previously here, "that the deed was his will," &c. are fully explained by them now to mean, (if used at all) that the provisions of the deed were in accordance with his wish, or desire. It is shown, that he executed the instrument when he was fully capable of understanding its import. That he did so after much deliberation, being cautioned, lest he should afterwards regret it. The deed was read to him, and he fully approved its provisions. Besides, he was advanced in years—had but one child, who was made one of the donees, and his habits of dissipation, rendered it entirely prudent for him to place the title of his property in such condition, as forbade his squandering it. The deed is an absolute conveyance to the donees, with warranty as to the title, and in the absence of evidence of fraud, mistake or surprise, it is perfectly clear, the title by it vested in the donees upon its delivery, and not being subject to revocation by the grantor, he could not, and *a fortiori*, his administrators cannot, divest the title thereby created.

We have not noticed the objections to the interrogatories, some of which are too leading, but excluding the proof elicited by such, enough remains to sustain, beyond all reasonable doubt, the chancellor's decree. Let the decree be affirmed.