35 628
120 480

# KINNEBREW'S DISTRIBUTEES vs. KINNEBREW'S ADMINISTRATORS.

[FINAL SETTLEMENT OF ADMINISTRATOR'S ACCOUNTS.]

1. *Consideration of deed.*—Under the statutes of this State, (Clay's Digest, 340, § 153 ; Code, § 2280,) the consideration of an instrument under seal may be impeached at law, and the instrument be avoided if voluntary ; yet, if it recites a valuable consideration, parol evidence cannot be received to change its legal effect, and to show that it was in fact merely voluntary ; but a recital of the payment of five dollars, where the instrument conveys a negro and other property, will not be regarded, in equity, as showing a valuable consideration.

2. *Voluntary executory trust not enforced.*—A court of equity will not enforce, against the grantor or his representative, a voluntary executory trust in favor of a grand-child.

3. *Instrument held to operate both as deed and as will.*—An instrument under seal, in form a deed of gift, by which the grantor, in consideration of natural love and affection for the grantee, who was his grand-son, and the present payment of five dollars by the grantee, conveys to the latter, by the words " do by these presents give and grant," a slave " and fifteen hundred dollars in cash, to be paid to him out of my [grantor's] estate at my death, by my executor or administrator,"—held a deed of gift as to the slave ; but, as to the money, a purely voluntary executory trust, which a court of equity would not enforce as an instrument *inter vivos*, but which was valid and operative as a will.

4. *Probate of testamentary paper.*—A testamentary paper cannot be recognized as valid in any forum until it has been admitted to probate.

5. *Credit allowed for claim against decedent's estate.*—The administrator in this case was held to have been properly allowed a credit for the payment of an account in favor of one of the decedent's grown sons, for services rendered by him during his father's life-time, in superintending and managing his business, on proof that the services were rendered with the knowledge and approval of the decedent, and were reasonably worth the sum charged, though there was no special contract as to the compensation.

APPEAL from the Probate Court of Tuskaloosa.

IN the matter of the estate of Litteberry B. Kinnebrew, deceased, on final settlement of the accounts of Edwin H. Kinnebrew, the administrator. The only matters here assigned as error are the rulings of the probate court in allowing the administrator credit for two vouchers, Nos. 5 and 8 in his account, to which the distributees objected.

Voucher No. 5 was a receipt; signed by M. D. Kinnebrew, and dated the 17th October, 1855, in the following words : " Received of E. H. Kinnebrew sixteen hundred and ninety dollars, being the amount (with interest added) given by L. B. Kinnebrew, deceased, to his grandson, Alonzo B. Kinnebrew, by deed dated the 22d December, 1851, directed to be paid at the death of said L. B. Kinnebrew, (which took place on the 17th March, 1854,) to his said grand-son ; the said E. H. Kinnebrew being one of the administrators of said L. B. Kinnebrew, and I (M. D. Kinnebrew) being the guardian of said Alonzo B. Kinnebrew."

Voucher No. 8 was an account in favor of M. D. Kinnebrew, against the estate of said L. B. Kinnebrew, containing the following items : " (May 10, 1851.) Contracting and doing riding to 1st October, 1851, $30 00. (October 1.) Overseeing, attending all the business of the farm, and finding self and horse, to October, 1852, $350 ; interest on same to 15th December, 1855, $97 52. Same to October, 1853, $350 ; interest to 15th December, 1855, $67 10. Same to October, 1854, $350 ; interest to 15th December, 1855, $36 72. (1851.) Expenses to Montgomery to buy groceries and sell cotton, $10. (1852.) Two trips to Montgomery to sell cotton, $20."

In reference to voucher No. 5, the administrator produced and proved the execution of a deed in the following words :

" State of Alabama, &rbrace; Know all men by these presents, Tallapoosa county.   that I, Littleberry Kinnebrew, of said county and State, for and in consideration of the natural love and affection which I have and bare to my grand-son, Alonzo B. Kinnebrew, of the same county and

State, and for and in consideration of the sum of five dollars cash in hand, paid by the said Alonzo B. Kinnebrew, the receipt whereof is hereby acknowledged, do by these presents give and grant to my grand-son, Alonzo B. Kinnebrew, a certain negro boy, Philip by name, about five years old, of yellow complexion, and fifteen hundred dollars in cash, to be paid to him out of my estate at my death, by my executor or administrator—to my said grand-son, Alonzo B. Kinnebrew ; to have and hold the above described negro boy, with the above named fifteen hundred dollars, to be paid out of my estate, to him, my grand-son, Alonzo B. Kinnebrew, his heirs and assigns forever. In testimony whereof, I have hereunto set my hand, and affixed my seal, this 22d December, 1851."

This instrument purported to be signed, sealed and delivered by the grantor, in the presence of three witnesses ; and appended to it were—1st, a certificate by a justice of the peace, dated the 22d December, 1851, to the effect that the grantor signed, sealed and delivered said instrument, on the day of its date, for the purposes therein mentioned, in the presence of said justice and the other two attesting witnesses ; 2d, a certificate of the probate judge, dated the 30th December, 1851, as to the official character of the justice of the peace ; and, 3d, a memorandum by the probate judge, to the effect that "the foregoing deed was filed in office for record on 30th January, 1852, and duly recorded on the same day."

"It was in proof, that the said L. B. Kinnebrew, after the date of said instrument, made his will, which was probated in this court, and under which the estate is now being distributed ; that said Alonzo B. was an infant under the age of twenty-one, the grand-son of said L. B. Kinnebrew ; that said M. D. Kinnebrew was the father of said Alonzo B., and was duly appointed his guardian ; that said Alonzo B. had been taken by his said grandfather, to be raised and educated, and was living with him at the time said instrument was executed ; that said L. B. Kinnebrew had said repeatedly, before said instrument was executed, that he intended to give said Alonzo B. fifteen hundred dollars, besides other property named in

the deed ; that when said deed was executed by him, he hesitated whether he would not execute to said Alonzo B. a deed to a quarter-section of land, in lieu of the $1,500, but, upon reflection, concluded to give him the money, and therefore executed said deed, and delivered the same to the draftsman, Allen L. Bailey, (one of the subscribing witnesses,) with instructions to take it and have the necessary certificates made out for its registration in said county of Tallapoosa, and to deliver said deed to M. D. Kinnebrew, the father and guardian of said Alonzo B.,—which the said Bailey accordingly did. There was no proof that the said L. B. Kinnebrew had any money on hand when he made said deed, save the one dollar which he paid the witness Bailey ; and the proof conduced to show that he had none at his death, nor was any returned in the inventory by his personal representatives. This was all the proof as to voucher No. 5 ; and thereupon the court allowed said voucher as a credit to the said administrator, and the said distributees excepted."

"To sustain voucher No. 8, the administrator offered, substantially, the following evidence : W. J. Osborne testified, that he knew M. D. Kinnebrew had rendered services for his father in his life-time, in superintending his business on his plantation, as charged in said voucher ; that when he went to said plantation, in June, 1853, he found said M. D. Kinnebrew attending to the business, and knows that he continued his services until about the 15th October, 1854; that said L. B. Kinnebrew, during this time, was greatly afflicted in body and mind; that there were occasional cases of sickness among the slaves on the plantation ; that he knew said M. D. Kinnebrew was frequently until midnight, and sometimes all night, waiting and watching over his father and his father's business; that he physicked and waited on all the sick negroes on the plantation ; and that the services of said M. D. Kinnebrew, in and about the business of the said L. B. Kinnebrew, were, in his opinion, worth $350 annually, although an overseer might have been employed for a less sum. Edmund Webb testified, that he knew of services rendered by M. D. Kinnebrew for L. B. Kinnebrew,

which were worth, in his opinion, one dollar per day, annually, for the time charged by him in his account against the estate; that he lived near to said M. D. Kinnebrew, and was cognizant of his rendering services and managing his father's business during the period specified in said account; that said M. D. Kinnebrew, by neglecting his own business in order to attend to his father's, lost more than the sum charged by him; that he thought an overseer might have been employed for a less sum, but said M. D. Kinnebrew performed the services of both principal and superintendent, his father being in a helpless condition. H. C. Ledbetter testified, that he was acquainted with the services rendered by said M. D. Kinnebrew for his father, and considered them reasonably worth $350 annually during the time charged in the account. T. D. Hart testified, that he was acquainted with the services rendered by said M. D. Kinnebrew for his father, and that said services were worth $350 annually; that said M. D. Kinnebrew had served in the capacity of superintendent of his father's business during the time charged in said account, while his father was incapacitated by disease from attending to business; and that while an overseer might have been employed for a less sum, his services would not have been worth so much. Pleasant Macon testified, that he was acquainted with the services rendered by said M. D. Kinnebrew for his father, and considered them worth $365 annually. Allen Kimball testified, that he was the family physician of said L. B. Kinnebrew during the time said M. D. Kinnebrew was in his employment as superintendent, and was frequently at his house; that said M. D. Kinnebrew served in the capacity of superintendent, as well as general manager of the business of his father, during the time charged in said account; and that his services were well worth $350 annually. The contestants proved, by one Bartee, that an overseer could have been employed for $200, or $250, though he was employed by the administrators, to attend to the plantation and hands of the estate, and was paid one dollar per day, besides being boarded,—which he deemed reasonable. The contestants proved, that the

court had made an allowance to said M. D. Kinnebrew, for services rendered to L. B. Kinnebrew after he had been declared *non compos mentis;* but it was shown that the services now claimed were rendered before that time, and that said L. B. Kinnebrew knew and approved' of the same; but the evidence did not show any special contract between the parties as to the sum to be paid for said services. It was proved, also, that said M. D. Kinnebrew *found* himself and his horse. This being substantially all the evidence, the court allowed voucher No. 8 as a credit to the administrator; to which the contestants excepted."

The allowance of each of these vouchers is assigned as error.

L. E. PARSONS, with BROCK & BARNES, for the appellant. 1. The character of an instrument is determined, not by the name given to it by the maker, but by the intention of the parties, the object which they had in view, the time and manner of its operation, and the circumstances attending its execution. Thus construed, the testamentary character of the instrument in controversy in this case, upon which depends the administrator's right to a credit for the payment evidenced by voucher No. 5, is shown by the following authorities: Habergham v. Vincent, 2 Vesey, 231; 1 Wms. Ex'rs, 54; Walker v. Jones, 23 Ala. 448; Taylor v. Kelly, 31 Ala. 59. If this be the true character and nature of the instrument, then, never having been probated as a will, it afforded no authority to the administrator to make the payment.—Rex v. Netherseal, 4 Term R. 258.; Armstrong v. Lear, 12 Wheaton, 175; Tarver v. Tarver, 9 Peters, 174; Pinkerton v. Walker, 3 Hayw. 223; Shepherd v. Nabors, 6 Ala. 631.

2. If the instrument be held a deed, it is equally inoperative, so far as it speaks of the $1500. At the time of its execution the grantor had no money in hand, nor does the instrument itself describe any particular money or fund, nor was any money on hand at the death of the grantor. As a gift, whether *inter vivos,* or *mortis causa,* the instrument is wholly void.—Pennington v. Patterson,

41

2 Gill & J. 208; Blakey v. Blakey, 9 Ala. 391; Holiday v. Atkinson, 5 B. & C. 501; Dodge v. Adams, 19 Pick. 429; Chitty on Contracts, 366, and cases cited in note *h;* 5 M. & S. 228; 1 Leon. 42; Hobart, 132; Addison on Contracts, 219. Being a mere executory gift, to take effect (if at all) at the death of the grantor, it does not create a charge on his estate, because it is wholly voluntary.—Crompton v. Vasser, 19 Ala. 259. That the instrument, although under seal, may be impeached for want of consideration, see Clay's Digest, 340, § 153; Code, § 2230; Freeman v. Baldwin, 13 Ala. 253.

Wm. P. Chilton, Watts, Judge & Jackson, and Geo. W. Gunn, *contra.*—1. It was manifestly the intention of L. B. Kinnebrew, by the execution of the instrument here in controversy, to give his grand-son a slave and $1500; and in order to effectuate that intention, the courts will construe the instrument to be either a deed or a will, as will best carry out the object intended. It cannot operate as a will, and was not intended by the grantor to operate as a will, because—1st, it is framed as a deed; 2d, it was to be recorded and delivered as a deed; 3d, it vests the title to the slave *instanter*, and creates a present charge as to the money, though payment was postponed until his death; 4th, the executors, to be appointed by a will subsequently made, were made trustees, and were directed to pay the money out of the estate which might come to their hands: and 5th, everything is done to perfect the grant and charge, and nothing remained to be done thereafter by the grantor. That the instrument is a deed, see Golding v. Golding, 24 Ala. 122; Elmore v. Mustin, 28 Ala. 313; Thompson v. Johnson, 19 Ala. 59; Adams v. Broughton, 13 Ala. 731.

2. Anything which has a potential existence, may be conveyed by deed.—Lightfoot v. Colgin, 5 Munford, 42; Banks v. Marksberry, 3 Litt. 275; Robinson & Caldwell v. Mauldin, Montague & Co., 11 Ala. 980, and authorities there cited. The delivery of the deed was sufficient, without delivery of the thing conveyed.—Jenkins v. Mc-Conico, 26 Ala. 213; McClure v. Colclough, 17 Ala. 89;

McCutchen v. McCutchen, 9 Porter, 650; Puryear v. Beard, 14 Ala. 121; Newman v. James, 12 Ala. 29; McRae v. Pegues, 4 Ala. 158; 6 Monroe, 72; 1 Dev. Ch. 456; 1 Strobh. 48–54; 5 Munford, 42.

3. The contest is between the administrator and the distributees of the grantor, creditors and purchasers not being parties. As between these parties, the consideration recited in the deed is amply sufficient.—Dunbar v. Woodcock, 10 Leigh, 628; Elam v. Keen, 4 Leigh, 333; Breckinridge v. Floyd, 7 Dana, 459; Lightfoot v. Colgin, 5 Munford, 42; Ward v. Trotter, 3 Monroe, 2–3; U. S. Bank v. Houseman, 6 Paige, 533; 7 Gill & J. 157; 24 Pick. 261; 18 Johns. 147; Wright v. Wright, 1 Cowen, 298; Addison on Contracts, 16–17.

4. As to the grantor, the trust created by the instrument is perfect—nothing remained for him to do. Consequently, equity would enforce its execution against his representatives.—Pulvertoft v. Pulvertoft, 18 Vesey, 99; *Ex parte* Pye, 18 Vesey, 140; Ellison v. Ellison, 6 Vesey, 662; Story's Equity, § 973; Lewin on Trusts, 112; 3 P. Wms. 222; 2 *ib.* 595; Ambler, 376; 2 Keen, 134; 7 Bro. P. C. 318; 3 My. & K. 347.

5. Even if the trust be executory, a court of equity would enforce it against the personal representative of the grantor, as in favor of the grantee, to whom the grantor had placed himself *in loco parentis*.—Lewin on Trusts, 116–37; Gilbert on Uses, (by Sugden,) 454; 7 Co. Rep. 40; Plowden, 298; 1 Spence's Equity, 450; 1 Story's Equity, §§ 433, 706 *a*, 793 *a;* Lloyd & G. 333.

A. J. WALKER, C. J.—We assert the following propositions: 1st, that the trust, specified in the instrument executed by L. B. Kinnebrew, for the payment at his death, by his representative, to his grand-son, of fifteen hundred dollars out of his estate, was purely voluntary; 2d, that the trust was also executory; and, 3d, that being voluntary and executory, it would not, as a provision of an instrument operative *inter vivos*, be enforced by a court of equity. We proceed to adduce the arguments and authorities which lead us to assert those propositions.

*The trust is voluntary.* The characteristics of the instrument, from which the arguments upon this point are drawn, are—that it is under seal, and that it recites natural love and affection for a grand-son, as the consideration for the trust and the conveyance of a slave.

It is a principle well established, that equity will, in cases within its jurisdiction, give effect to executory obligations, which would be binding at law. Upon this principle, bonds and covenants have been enforced in chancery against the covenantor or obligor, or his representatives, notwithstanding they were in fact voluntary; because the seal operated an estoppel at law against the denial of the consideration, and they were therefore obligations binding in a court of law.—Williamson v. Codrington, 1 Vesey, sr. 511; Clough v. Lambert, 10 Sim. (16 Eng. Ch.) 174; Hall v. Palmer, 3 Hare, (25 Eng. Ch.) 532; Fletcher v. Fletcher, 4 Hare, (30 Eng. Ch.) 67–76; 1 L. Cas. in Eq. top page 238, marg. 191. We do not say, that the instrument in this case contains a covenant for the payment of the fifteen hundred dollars, upon which suit at law might be brought; but, if it be conceded that it does, the principle above stated cannot apply; for, under our statutory law, the consideration of a sealed instrument may be impeached, and, if voluntary, it may be avoided by plea in a court of law.—Clay's Digest, 340, § 153; Code, § 2230; Freeman v. Baldwin, 13 Ala. 252. That a seal conclusively implies a consideration, is not the law in this State.

While our statute allows the impeachment of a sealed instrument, for want of consideration, it does not interfere with the rule in reference to the variation of the legal effect of written instruments by parol proof.—2 Phillipps on Ev. (ed. of 1859,) 652, note 489; McCurtie v. Stevens, 13 Wend. 527. If the instrument in this case, upon its face, purports to be upon a valuable consideration, it would be incompetent, in the absence of any question of fraud, for the maker or his representatives to change its legal effect, and defeat its legal operation as a conveyance, by showing through the agency of parol evidence that it was voluntary, and without a valuable con-

sideration.—Eckles & Brown v. Carter, 26 Ala. 563; Murphy v. Bank, 16 Ala. 90; McRae v. Purheart, 16 Wend. 460; Grant v. Townsend, 2 Hill, 554; 2 Phillips' Ev. (ed. of 1859,) 655, n. 490; 1 *ib.* 476, n. 131; 4 Greenleaf's Cruise on Real Property, 23, n. 1.

But the instrument in this case does not, upon its face, purport to be upon a valuable consideration. When a court of chancery is asked to execute trusts, it will take judicial notice, that such a pecuniary consideration as five dollars is merely nominal, when there is a transfer of so much value as in the instrument under consideration. "It is to be observed, that a deed may be founded on some consideration, and yet still come within the technical definition of a voluntary instrument. In equity, the statement of a mere nominal pecuniary consideration certainly would not be allowed to affect the construction or operation of the deed."—Hill on Trustees, 164, marg. 107. There are also numerous cases, in which the courts have, in the absence of all extrinsic evidence, denied to deeds reciting a nominal consideration any effect under the statute of frauds, when a valuable consideration was necessary to their validity.—Felder v. Harper, 12 Ala. 612; Murphy v. Bank, 16 *ib.* 90; McRae v. Pegues, 4 *ib.* 158; Ridgeway v. Underwood, 4 Wash. C. C. R. 133; Hatch v. Spaight, 3 Cow. 31. From these authorities it is a necessary inference, that when a valuable consideration is necessary to support a deed, the bare recital of a nominal pecuniary consideration will not be regarded as evidencing such valuable consideration. This doctrine is not at war with the principle, that the smallest actual consideration of benefit to the promisor is sufficient to support a promise.—Chitty on Con. 29; Hubbard v. Coolidge, 1 Metc. 93; Lawrence v. McCalmont, 2 How. (U. S.) R. 452.

The only other consideration of the instrument in this case is affection for a grand-son. Whether or not affection of the husband for his wife, and of a parent for his child, is such a consideration as will induce the enforcement of executory trusts, and place the beneficiaries of such trusts in a more favorable position than that of mere

volunteers, is one of the mooted questions of the law. After referring to authorities bearing upon the question, we shall leave it undecided.—2 Story's Eq. Jur. §§ 987, 793; Hill on Trustees, top 129, marg. 83, note 1; 1 Lead. Cas. in Eq. (top 238,) marg. 191, top 243-47; Dwoll v. Wilson, 9 Barb. 487; Buford v. McKee, 1 Dana, 107; Adams' Eq. 97; Andrews v. Andrews, 28 Ala. 432; Doe v. McKinney, 5 Ala. 719; *Ex parte* Pye, 18 Ves. 140; Popys v. Mansfield, 3 Myl. & Cr. 359. If affection be a sufficient consideration to support such a trust, it must be confined to the relation of husband and wife, or parent and child. The authorities do not authorize the extension of the principle to collateral kindred, or more remote descendants than children.

*The trust is executory.* The payment of the money was strictly a thing of future performance. Neither the legal nor equitable title to the property charged passed by the instrument. There was no declaration of trust by the maker, and the relation of trustee and *cestui que trust* was not created. Nothing more is done by the maker of the instrument, than to attempt to bestow a right to have, at his death, payment of fifteen hundred dollars from the representative of his estate. If any right passed, it was simply a right in action. There are none of the features of an executed trust, and the charge upon the maker's estate falls within no definition or description of an executed trust.—4 Kent's Com. (top page) 336; Hill on Trustees, 137, (marg. ) 88–89; Lewin on Trusts, (marg.) 110; 1 Story's Eq. Ju. § 433, note 5; 2 *ib.* § 973; 1 Lead. Cas. in Eq. 225, *et seq.;* Fonblanque's Eq. 407, notes; Gordon v. Green, 10 Geo. 504; Dennison v. Goehring, 7 Barr, 107; Edmondson v. Dyson, 2 Kelly, 307–320; Andrews v. Hobson, 23 Ala. 231.

This case is not within the principle laid down in the cases of Pulvertoft v. Pulvertoft, (18 Vesey, 99,) and *Ex parte* Pye, (18 Vesey, 140,) which are cited for the appellee; because here there is no actual transfer, legal or equitable, of any thing. We have before us a bare attempt to transfer the right of having something done *in futuro.* It is analogous to an agreement to transfer

stock, without an actual transfer, which is put, in *Ex parte* Pye, as an illustration of the character of voluntary agreements, upon which the court of equity "will not interpose."

*The trust being executory and voluntary, it will not be enforced in equity, as the provision of a deed operative inter vivos.* The proposition, that a voluntary executory trust will not be executed, is not disputed; and we need only refer to the authorities last above cited, and our own decision in Crompton v. Vasser, (19 Ala. 259,) which fully sustains it.

Having ascertained that the instrument before us cannot operate as a deed as to the fifteen hundred dollars, we must next inquire, whether it is not, as to the fifteen hundred dollars, testamentary, and may not have operation as a will.

In considering whether the provision in question is testamentary, it must be observed, that the instrument certainly conveyed a present title, operative *inter vivos*, to the slave Philip, and was, *quoad hoc*, a deed. It was said in Thompson v. Johnson, (19 Ala. 59,) that it might be collected from a variety of cases, that one and the same instrument cannot be both a will and a deed. This remark may be correct in reference to the instrument which was then before the court; but it cannot be true, as the authorities show, in reference to an instrument which employs variant and distinct terms in reference to different articles, clearly indicating the intent to give the one a testamentary, and the other a present operation.—Robinson v. Schly & Cooper, 6 Geo. 515; Dawson v. Dawson, 2 Strob. Eq. 34; 1 Jar. on Wills, 12, n. 1. While the provision as to the slave affords a strong argument against the position that the provision is testamentary; yet the argument is by no means conclusive. If it were, it would follow, that it would be impossible to couch distinct provisions of the same instrument, touching distinct property, in such language that the one would, and the other would not, be testamentary; and that a man could not write both a deed and a will upon the same paper, and over the same signature. A proposition leading to such

a result, is unreasonable, and cannot command our approval.

The judicial mind is required by an established principle to enter upon the inquiry, as to the character of the provision for the payment of fifteen hundred dollars, with a strong inclination to regard 'it as testamentary; for it can otherwise have no effect. The mere fact, that it can only have effect in a testamentary character, is sufficeint to solve the difficulties of a doubtful case, and procure for it the construction which gives it validity.—Thompson v. Johnson, 19 Ala. 59; Dunn v. Bank, 2 Ala. 152; 1 Jar. on Wills, 19.

Certainly, the instrument is in the form of a deed, and words of immediate transfer—" do give and grant "—are used. But that is not necessarily a controlling consideration; for the courts will pronounce an instrument to be a will, no matter what its form may be, if it is designed to make a posthumous disposition of property, and is really to take effect at death.—Hester v. Young; 2 Kelly, 50; 1 Jar. on Wills, 11–12–13.

The words of present grant, in their application to the fifteen hundred dollars, are subjected to a qualification. That qualification is not fastened upon the transfer of the slave; and in that particular, as well as in its capacity to have an immediate effect, the provision as to the slave differs from that as to the fifteen hundred dollars. The qualification is, that the payment of the fifteen hundred dollars was to be made at the death of the maker of the instrument, out of his estate. There is no transfer of any designated or subsisting funds, the right to the actual use and enjoyment of which is postponed to the maker's death; and that peculiarity makes this question totally unlike those questions which were decided in Elmore v. Mustin, (28 Ala. 309,) Golding v. Golding, (24 Ala. 122;) Wilks v. Greer, (14 Ala. 437,) Adams v. Broughton, (13 Ala. 731,) Summerlin v. Gibson, (15 Ala. 406,) and Simmons v. Augustine, (3 Porter, 69.)

There is a class of cases reported in the books, relating to instruments in which the maker promised to pay after his death, or covenanted that his representatives should

pay after his death, or in some way transferred an unqualified right to payment by his representatives.—Shields v. Irwin & Reed, 3 Yeates, 389; Alexander v Brame, 35 Eng. Law & Eq. 336; Hunt v. Hunt, 4 N. H. 434; Jackson v. Jackson, 6 Dana, 457. The decisions in reference to such cases are conflicting, and we shall not examine them. For inclining (as we must) to regard the provision in question as testamentary, we are authorized to take a view of it which distinguishes this from all those cases. The maker of the instrument before us does not promise to pay at his death, nor does he covenant that his representative shall pay at his death, nor does he transfer an *unqualified* right to have payment at his death from his representative. The right of payment at his death is clogged with this qualification, that it is to be made out of the estate of the maker. We understand "*the estate,*" out of which the payment is to be made, to be the estate of which he might be the owner at his death. The executor or administrator could have access to no other for the purpose of payment. As the payment was to be made out of the estate which might be left at the death of the maker of the instrument, it remained under his control until his death. By disposing of his property before his death, and leaving nothing, he could entirely defeat the disposition. Alonzo B. Kinnebrew, the beneficiary, could not as a creditor avoid his voluntary dispositions of his property, nor file a bill for the protection of an interest by way of charge in remainder upon his estate. If there had been a conveyance of all the property which the maker of the instrument might at his death leave, it would have been clearly testamentary. Watkins v. Dean, 10 Yerger, 321. The character of the instrument cannot be changed, because it is a charge upon all the property, instead of a conveyance of the property itself.

The construction which we have adopted, if not in itself manifestly correct, is certainly permissible, under the rule which obliges us to incline to regard it as testamentary. Under that construction, the provision as to the payment of fifteen hundred dollars was revocable,

like a will; and being payable out of the estate left, by the executor or administrator, is, in every feature, identical with a legacy bequeathed by will. We decide, therefore, that the instrument in question, so far as it transfers a claim to the payment of fifteen hundred dollars, was testamentary.

[4.] As the instrument, in its testamentary character, conveys only a pecuniary legacy, it cannot be recognized as valid in any forum, until it has been admitted to probate.—Shepherd v. Nabors, 6 Ala. 631; 1 Jar. on Wills, 213–214–215, n. 6; Fuller, *Ex parte*, 2 Story's C. C. R. 327.

[5.] There was no error in the allowance of voucher No. 8.

For the error in the allowance of voucher No. 5, the decree of the court below must be reversed, and the cause remanded.