<hr />

## CROMPTON, et als. vs. VASSER, Ex'r.

1. When relief is prayed in a bill upon an alleged agreement, the agreement, if not admitted, must be proved *substantially as alleged.*

2. When lands are sold under an execution against the principal debtor, and purchased by one of his sureties with money belonging to himself and another co-surety, a third co-surety cannot claim to participate in the benefit of the purchase as an indemnity against his liability with the other sureties.

3. A bill which seeks to enforce the execution of a trust in the name

of a mere volunter, and for his benefit, must allege a declaration of the trust in his favor.

4. Courts of equity will not enforce, as in favor of a volunteer, a purely voluntary trust which is executory.

5. But when a person has constituted himself a trustee for another, and the relation of trustee and *cestui que trust* has been fully established, the trust may be enforced in equity for the benefit of the *cestui que trust*, although he is a mere voluntee.

ERROR to the Chancery Court of Dallas. Tried before the Hon. W. W. Mason.

THE bill was filed by John Crompton, G. M. Bender and Henry T. Crompton and wife against Littleberry Vasser as executor of John E. Vasser, deceased. It alleges that John Crompton, Bender and John E. Vasser were bound, prior to May, 24, 1839, and at that time, as securities for said Henry T. Crompton, on two promissory notes, each for about $1,000, one due to the State Bank at Tuscaloosa, the other to the Branch Bank at Mobile; that on or about May 24, 1839, the sheriff of Wilcox county being about to levy executions in his hands on certain lands in that county belonging to said Henry T. Crompton, it was agreed between said John E. Vasser and the complainants, that Vasser should become the purchaser of said lands, with $200 of his own money, and the balance to be furnished by said John Crompton, and should hold and dispose of the same for the indemnity of himself and his co-sureties on said bank debts, and also for the relief of said Henry T. Crompton and wife; that Vasser accordingly became the purchaser of said lands at the sheriff's sale, and after the sale, but on the same day, executed an instrument in writing, wherein he acknowledged and set forth the purposes and objects of his purchase. This instrument, which is the "Exhibit A," spoken of in the opinion, recites that the land was to be returned to H. T. Crompton on his paying said two bank debts and also refunding to Vasser the two hundred dollars which he had advanced on said purchase, and that when said bank debts were paid and said $200 refunded, Vasser bound himself to convey said lands to Mrs. Compton and her heirs.

The bill also alleges that said Vasser afterwards, in November, 1840, with the assent of complainants, sold said lands to

Crompton et als. v. Vasser, ex'r.

one Maxwell, together with certain other lands in Monroe county, which had been sold by the Sheriff of Monroe county as the property of Henry T. Crompton, and for which Vasser and John Crompton held the sheriff's title deed, and took Maxwell's five notes for the purchase money, one for $740, payable to said Vasser on the 1st April, 1841, and another for $500, payable to said Vasser, January 1, 1842, another for $200, payable to said Vasser, January 1, 1843, another for $300, payable to said Vasser, January 1, 1844, and another for $500, payable to said John Crompton, January 1, 1843; that said John Crompton received said note of $500 payable to himself, as a partial indemnity against his said liability for H. T. Crompton on said bank debts; that Vasser afterwards assigned to John Crompton, for the use of Matilda Crompton, the wife of H. T. Crompton, the note for $500, due January 1, 1842; that Jno. Crompton had paid said debt to the bank at Tuscaloosa, when it became due, and payment was about to be coerced, and that he had not been in any manner indemnified for such payment; that he had not collected any thing on the note of Maxwell which he had received, and did not expect to collect any thing from it for a long time, as Maxwell had signified his intention to litigate it, and if collected the proceeds would not reimburse him for what he had paid to the Bank at Tuscaloosa; that the debt due to the bank at Mobile had become due, and coercion of payment was threatened; and that Vasser's executor refused to appropriate the proceeds of Maxwell's notes, which had come to his hands as executor, to the payment of said bank debt, or the indemnity of complainants, Bender and John Crompton, against their liability therefor.

The bill prays an account of the trust funds which have come to the hands of the executor, and such an application of the funds as will most effectually protect Bender and John Crompton against their liability for said bank debt.

The executor, in his answer, denies all knowledge of the parol agreement alleged in the bill, and insists that Vasser purchased the lands in Wilcox county with his own money, and that he gave said $500 note on Maxwell to John Crompton for his interest in the lands in Monroe county.

J. P. SAFFOLD, for plaintiffs in error:

It has been decided that a bill does not become multifarious

because all the plaintiffs are not interested to an equal extent.—Knye v. Moore, 1 S. & S. 61; 1 Dan. Ch. Pr. 396.

And where several persons claim under one general right, they may file one bill for the establishment of that right without incurring the risk of a demurrer for multifariousness, although the title of each plaintiff may be distinct.—Powell v. The Earl of Powis, 1 Y. & J. 159; 1 Dan. Ch. Pr. 396.

If a bill does not pray for multifarious relief, it cannot be objected to for multifariousness, though the case stated would support a prayer for multifarious relief.—Boyd v. Hoyt, .5 Paige 65; 1 Dan. Ch. 384, N. 1.

In chancery all persons whose rights may be affected by the decree must be made parties to the suit.—Harris et. al. v. Carter's Adm'r., 3 Stew. 233.

"It is a general rule that all persons whose intererests are to be affected or concluded by a decree, ought to be made parties."—Judson v. Emanuel et. al., 1 Ala. 589.

"In order to prevent multiplicity of suits, courts of equity sometimes entertain bills by complainants between whom there exists no privity of contract."—Kennedy's Heirs v. Kennedy's Heirs, 2 Ala. 572.

Where several persons are interested in the distribution of a trust fund, this is a sufficient privity to warrant their being made parties to the same bill, either as plaintiffs or defendants.—Toulmin et. al. v. Hamilton, 7 Ala. 362.

It is no objection that a trustee and *cestui que trust* unite in the same bill; they constitute but one.—Hitchcock's Heirs & Adm'r. v. U. S. Bank, 7 Ala. 386. See also Harkins et. al. v. Pope et al., 10 Ala. 496.

"All persons legally or equitably interested are proper parties, as the court will not act by halves, but adjust the matter fully between all concerned.—Story Eq. Pl. §§ 72-3-4-5; Ib. 137-8; 2 Paige, 278; Knight v. Knight, 3 P. Wms. 331. See also M. & C. P. R. R. Co. v. Talman, 15 Ala. 472, case of two mortgages.

As to the misjoinder—"When a demurrer or plea is put in for the want of proper parties, if a demurrer, it must appear, if by plea, it must be shown, who are proper parties."—Story's Eq. Pl. § 238, p. 203; 1 Dan. Ch. Pr. 333.

Demurrer should show matter of objection, 30th Rule, Clay's Dig. 616.

Crompton et als. v. Vasser, ex'r.

As to the misjoinder again—They have no right to object for a misjoinder of parties complainants under the demurrer filed. That there is a want of proper parties, see Dan. Ch. Pr. 665. Also see the rule of Ch. Pr. 30 Clay's Dig. 616. If the cause of demurrer must be given by our own rules, it would seem no other ought to be allowed.

HUNTER, *contra:*

1. The bill is fatally defective on account of a misjoinder of parties. No averment is made which shows a joint trust for Mrs. Crompton and the sureties—the trusts are wholly distinct. The bill sets up the written trust for her benefit, and makes it an exhibit, and avers no fraud or mistake in it. She can, therefore, set up no trust in relation to this matter, except the written one. This view shows beyond all question, that her trust is entirely distinct. There is no averment that there will be a balance to go to Mrs. Crompton. This objection also shows that the bill is multifarious, and must be dismissed for that reason. See as to misjoinder of parties, Agee v. Steele, 8 Ala. 948; Story's Eq. Pl. §499, p. 509; 14 Ala. 195. As to multifariousness, McIntosh v. Alexander, 16 Ala. 87; Story's Eq. Pl. p. 308, § 279. Not only does the bill fail to aver a surplus for Mrs. Crompton, but the amended bill plainly shows that there can be no surplus—that she has received $500, all that is due her.

2. The bill must be dismissed because there is a failure to prove a right of action in all the complainants. This court has recently held, that a bill will be dismissed if there is a failure to prove the case as to any of the complainants. There is an entire failure to make out a case in favor of Mrs. Crompton, as either one of two reasons conclusively proves. 1st: She is confined to the written trust, and it is not pretended that she has proved a case entitling her to have an execution of that trust.—Hair v. La Brouse, 10 Ala. 554; Paysant v. Ware, 1 ib. 164; McKinstry v. Conly, 12 ib. 678; Freeman v. Baldwin, 13 ib. 246. 2d, There was no consideration for any trust to Mrs. Crompton. For that reason it is certain that any parol trust is void, and cannot be enforced in her favor.

3. To establish a parol trust very great strictness of proof is

required.—McKinstry v. Conly, 12 Ala. 678; Freeman v. Baldwin, 13 ib. 246 ; Fonblanque's Eq. p. 170 note, and 372 note; Boyd v. McLean, 1 John. Ch. R. 590 ; Steene v. Steene, 5 ib. 1.

4. Here after the pretended parol trust was entered into, it was finally reduced to writing. It is now proposed not only to add to that written trust, but also to contradict it by setting up a trust inconsistent with and subversive of it. See Mead v. Steger, 5 Por. R. 498; Cuthbert & Stanly v. Bowie, 10 Ala. 163.

5. As to the effect of the proof. Considering that the whole proof consists merely in conversations and transactions, however satisfactory in themselves, entirely loose, their character and their force is completely broken by the written trust and the evidence tending to show a settlement of the trust if there ever was one.

PARSONS, J.—The complainants in the bill are John Crompton, (who died pending the suit,) Griffin M. Bender and Henry T. Crompton and his wife, and the bill having been dismissed by the Chancellor, the complainants are now plaintiffs in error. We will speak first of the lands in Wilcox, as to which the bill alleges that there was an agreement between the complainants and Dr. John E. Vasser, pursuant to which these lands were purchased by him, partly with his own and partly with John Crompton's money, for the purposes mentioned in the bill, and sold by him to Maxwell, by consent of the complainants, in fulfilment of the objects of the purchase. This trust is alleged to have grown out of an agreement between or among all the parties. A distinct agreement is stated, and out of this, if true, the trust arose, and the rights of the several parties are to be ascertained by the agreement, and also the duties and obligations of the trustee. The bill clearly puts the claim of the complainants upon this foundation and no other. But is the bill sustained by the evidence? The allegation of the agreement between or among Dr. Vasser and all the complainants is neither admitted by the answer, nor proved. We know that some parts of the evidence tend to prove such an agreement, but in our judgment, they are not sufficient to establish it. It is, for instance, by no means satisfactorily proved that Mr. Bender was a party to any actual contract or agreement of the kind. It may be said that there was some such an agreement between Dr. Vasser

and John Crompton, by which Bender was secured as one of the securities of Henry T. Crompton. But if it were so, the allegation of the bill, according to which Bender was a contracting party, is not proved to be true. The agreement, therefore, not being such as is alleged, can be no ground for a decree in favor of Bender, nor, indeed, in favor of any of the parties. For it is indisputable that an agreement alleged, upon which relief is prayed, must be admitted or proved, substantially as alleged.—Mason's Adm'rs. v. Maury's Adm'r., 8 Port. 211.

2. Bender, therefore, not being entitled to relief upon any contract alleged in the bill and admitted by the defendant or proved, it becomes necessary to inquire whether he can be relieved upon the fact of his relation as co-surety. Putting the agreement, whatever it may have been, out of the way, and the additional facts are, that Dr. Vasser purchased the lands in Wilcox at a sale made by the sheriff under an execution in favor of another person against Henry T. Crompton, and that the purchase money was paid in part out of his own and in part out of John Crompton's money, according to some of the evidence. Upon those lands the sureties had no previous lien or claim whatever. The right of Dr. Vasser and John Crompton thereto is the same as if they had belonged to, and been sold as the property of a stranger to all the transactions; in which case it is evident, Bender could not claim to participate in the benefit of them as an indemnity against his liability as co-surety with Dr. Vasser and John Crompton for Henry T. Crompton. It would have been otherwise if Vasser and John Crompton had obtained an indemnity from Henry T. Crompton, their principal in the debts, by an arrangement with him.

3. It is alleged in the bill that Dr. Vasser acted upon the trusts, but the allegation is in reference to the trusts that were created and defined by the supposed agreement with all the complainants, by which, consequently, his liabilities and duties are to be ascertained, but as the agreement was not proved, the Chancellor could not proceed upon it. If he assumed, or was bound for any other trust duties, it is not stated in the bill, unless so much of the bill as relates to the certificate marked A, and exhibited with the bill, is an exception to this, and of that we will speak in another part of this opinion.

4. But if it were conceded that the bill is so drawn as not to

18

be liable to the observations just made, then the question is, can Bender recover upon the facts admitted or proved? He is a mere volunteer; he was a party to no agreement, and advanced no consideration. If a trust for his benefit had been declared, and that fact accordingly alleged in the bill, we would consider his case upon that ground; but there is no allegation of the sort in the bill, for we will show in another place, that the paper marked A, which is stated in the bill, can avail nothing in this suit. A declaration of trust should be stated in the bill.—McFadden v. Tuskyus, 1 Phillips R. 153; 1 How. 458; 1 Keene 558, notes.

5. If Bender can recover at all, therefore, it is upon the ground that the trust for his benefit was actually and completely created. Courts of equity will not enforce a mere voluntary trust which is executory. Judge Story adds, "and, upon the same ground, if two persons, for a valuable consideration as between themselves, covenant to do some act for the benefit of a third person, who is a mere stranger to the consideration, he cannot enforce the covenant against the two, although each one might enforce it against the other. But it is otherwise when the use or trust is already created and vested, or otherwise fixed in the *cestui que trust ;* or, when it is raised by a last will and testament."—2 Story's Eq. § 973. The only agreement which is stated in the bill is not proved. If Bender can recover at all, it is upon the supposition that there was a use or trust, not executory, but actually created and vested, or fixed in him as *cestui que trust.* The cases of Coleman v. Sorel, 3 Bro. C. C. 12; S. C. 1 Ves. jun. 50; Ellison v. Ellison, 6 Ves. 656, and Pulvertoft v. Pulvertoft, 18 Ves. 84, and 1 Keene 558, notes, show that when a trust is actually created in favor of a volunteer, a court of equity will enforce its execution. And it seems that a party may so constitute himself a trustee that a court of equity will execute the trust in favor of a volunteer.—*Ex parte* Pye and *ex parte* Dubost, 18 Ves. 149. Then, if Dr. Vasser did constitute himself a trustee for Bender, so that the trust was completely created, and intended for the benefit of Bender, or of Bender and others, and the relation of trustee and *cestui que trust* fully established, it may be enforced in equity for Bender's benefit, although he is a volunteer. But all this must have been done, and it must appear by evidence that is in all respects sat-

Crompton et als. v. Vasser, ex'r.

isfactory. We are not convinced that there was a certain trust actually created, with intention to make Bender individually, or with others, a *cestui que trust*, with vested rights as such. This may have been so; there is evidence tending to such a conclusion, but we cannot affirm that it is satisfactorily proved. Dr. Vasser doubtless expected the debts to be paid out of certain resources, and desired and intended, in that event, that Bender should be relieved of his liabilities. But we think Bender's relief was not, or, at any rate, is not clearly proved to have been, a motive or object of the transactions, though it might, perhaps, be a consequence of them. In this view, the exhibit A does not create a trust for Bender, or make him a *cestui que trust* with certain or fixed rights. But the last answer of the defendant expressly denies that the lands mentioned in that exhibit were the same that are mentioned in the bill as having been purchased with the joint funds; and to our apprehension it does not clearly appear that they were the same; but if they were, there are reasons why that circumstance would not change our opinion of the rights of any of the parties.

6. As to the lands in Monroe, we do not discover by the bill, what interest or rights, if any, in respect of them, is claimed by Bender. But if it was the object to assert any rights in his behalf in that respect, an answer is to be found, in what has been already said. We have spoken more particularly of the case in relation to Bender, because it appears that he paid part of the debt to the Branch Bank at Mobile, and it does not appear, as we understand the case, that it was all paid back to him. The residue, however, is far less than his proportion of the debts as one of the sureties. Yet if there was ever an effectual trust created in his favor, it is still a subsisting one as to the extent of the residue. His claim in this last view is already answered.

7. The Chancellor dismissed the bill on the whole evidence and pleadings, upon the merits of the case, considering the evidence uncertain and insufficient, and because it tended to show that there was no subsisting trust. We cannot say that he was in error. We do not understand the counsel of the plaintiffs in error to contend that, in this suit, there should have been a trust declared or a decree of specific performance upon the exhibit A, in favor of H. T. Crompton or his wife.

The decree is affirmed