CASE 78.—ACTION BY WILLIAM M. GASTINEAU AGAINST WALTER ELROD CLAIMING A LIEN ON CERTAIN PROPERTY WHICH DEFENDANT HAD PURCHASED TO SATISFY A DEBT ON WHICH THEY WERE COSURETIES.—February 13.

## Elrod v. Gastineau

Appeal from Pulaski Circuit Court.

M. L. JARVIS, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Reversed.

Principal and Surety—Rights of Surety as to Co-Surety.—One conveyed to appellant and appellee his equity of redemption in land sold under a mortgage, to indemnify them against loss as sureties on his bond as a guardian, and, becoming indebted to his ward, was sued and execution issued against the equity of redemption on a judgment against him for $331. Appellant purchased it at sheriff's sale for $175, which was applied to the ward's claim, appellant and appellee each paying $78 to discharge the balance. Appellant redeemed the property. Held, that the purchase by appellant did not redound to appel-

vol. 124—39.

Elrod v. Gastineau.

lee's benefit, and no lien attached to the property in his favor for the amount paid by him towards the discharge of the guardian's debt.

JAMES DENTON, attorney for appellant.

This case rests purely upon questions of law.

1. The mortgage taken by appellee inured to the benefit of both appellee and appellant, and appellee cannot enforce the same, as against appellant after each has paid an equal amount of the judgment.

2. The acts done by appellant in relation to securing the equity of redemption and having same sold, also inured to the benefit of both sureties, and unless there was fraud upon the part of appellant, which is not alleged, the transaction is binding and valid.

3. If the purchaser of the title at the sale, should be adjudged to have taken the property subject to the Gastineau mortgage, this mortgage, inuring to the benefit of both parties, cannot be enforced as against appellant.

### AUTHORITIES CITED.

McMahon v. Fawcet, 14 Am. Dec., 796; Farmers' National Bank v. Snodgrass, 54 Am. St. Rep., 797; Hoover v. Mower, 84 Iowa, 43; 35 Am. St. Rep., 293, and note; Extended notes to Gross v. Davis, 10 Am. St. Rep., 642, and Hall v. Cushman, 43 Am. Dec., 563; Bolin v. Metcalf, 71 Am. St. Rep., 898; Morrison v. Poynts, 7 Dana, 307; Goodloe v. Clay, 6 B. Mon., 236; Moore v. Moberly, 7 B. Mon., 299; Eaton on Equity, page 508, sec. 249; Commissioners of McDowell County v. Nichols, 92 Am. St. Rep., 785; Roberts v. Cooper's Assignee, 12 Ky. Law Rep., 112; May v. Patterson, 13 Ky. Law Rep., 779; Basley v. Taylor, 5 Dana, 157; Hutson's Adm'r v. Combs, 110 Ky., 672.

BEN V. SMITH and T. Z. MORROW for appellee.

The contention of appellee is that the relationship of the parties as joint sureties and as joint grantees in the conveyance of the equity of redemption, inured to the benefit of both, subject to the prior lien of appellee for the money paid out by him and this was the view of the chancellor. (Ky. Statutes, sec. 1709.)

Opinion of the Court by Judge Barker—Reversing.

The appellant, Walter Elrod, and the appellee, William M. Gastineau, on the 27th day of January, 1891, became joint sureties on the bond of William Lee as guardian for Ephraim C. Musser, a minor. On the 11th day of February, 1891, Lee executed to Gastineau a mortgage on certain real estate described in the petition to indemnify him from loss by reason of his suretyship on the bond. Prior to the execution of the guardian's bond, Lee had executed and delivered to John Griffin a mortgage on the same property to secure a debt due to him. Griffin having died, his administrator instituted an action in the Pulaski circuit court to enforce the mortgage lien of his decedent, and for a sale of the property to pay the debt which it secured. Gastineau and Elrod were not made parties to the suit, but both seem to have known of its pendency. The property was sold under Griffin's judgment, but, as it did not bring two-thirds of its appraised value. the purchaser was not given possession. Afterwards, William Lee conveyed his equity of redemption. in the property to the appellant and appellee to secure them against any loss by reason of their being his sureties on the guardian's bond. He had become indebted, and being sued, a judgment was rendered in the ward's favor for the sum of $331. Execution issued on this judgment, and was levied upon his equity of redemption in the property. At a sheriff's sale under the execution, the equity of redemption was purchased by the appellant for the sum of $175, which was paid to the sheriff, and applied to the extinguishment of the ward's debt, leaving a balance of $156, which was satisfied by the sureties each

paying $78. Appellant, Elrod, having paid the purchase price of $175 to the sheriff, redeemed the property from the original purchaser under the Griffin judgment by paying to him $190, being the amount he paid with 10 per cent added; he also paid $14 taxes due upon the land. Appellee Gastineau, being of opinion that the purchase by his co-surety redounded to his benefit, instituted this action against him, claiming a lien for the sum of $78 he had paid as above stated, and praying that it be enforced, and the property sold for the purpose of satisfying his debt. The chancellor sustained this position, adjudging him a lien for the amount he had paid out as surety for William Lee, subject to Elrod's lien for the amount he had paid to the purchaser under the Griffin judgment—$190—and the sum he had paid at the sheriff's sale for the equity redemption—$175; any overplus after these sums were paid was to be divided equally between the appellant and the appellee to the extent of $156. The judgment also ordered a sale of the property to carry its provisions into effect. To reverse this judgment, the appellant prosecutes this appeal.

It is conceded by both parties to this litigation that, when a principal conveys or pledges property to one surety to indemnify him from a loss by reason of the suretyship, this conveyance or pledge redounds to the benefit of all co-sureties. This principle is well settled, and rests upon the presumption that the principal will not discriminate between those who stand toward him in the same relation, or if he does intend so to discriminate, then it is a fraud on the other sureties, to turn over to one of them property which should be held to indemnify all jointly. Brandt on Suretyship, section 268; Moore v. Moberly, 7 B. Mon. 299. And, under this principle, there is no doubt that

the mortgage given by Lee to Gastineau redounded to the benefit of the co-surety, Elrod, and, of course, the conveyance by Lee to them of his equity of redemption was for their joint indemnity. But that is not the question we have here. The guardian, Lee, could not, and did not intend to, convey his property to his sureties to the injury of his ward, Musser, but only to indemnify them against loss by their payment of the judgment rendered against them as his sureties. Therefore, when the execution issued on the judgment of the ward against the guardian the sheriff very properly levied it upon the only property he had, which was his equity of redemption in the land sold under the Griffin judgment; and when the sheriff advertised the sale of the property levied, the question arose which must be answered in this case: Might one of the sureties bid at that sale in his own interest without regard to the interest of his co-sureties?

It will be observed that the principle which invests all sureties with an interest in any property given by the principal debtor to any surety, has no application to the situation we now have under consideration. The state of affairs now presented was not brought about by any act of the principal; nor was he turning over property to one surety to the exclusion of the other. The property is, indeed, that of the principal, but it is taken by the hand of the law for the purpose of satisfying a debt for which the sureties were bound by the terms of the bond. The common interest of both the sureties was involved in having that property bring its highest market value, because the proceeds of the sale were to be applied to the discharge of their joint liability; and, therefore, it was much to their interest that the bidding should be open and free to every competitor who desired to purchase the property. The rights of the sureties as sureties in the property were

to be exhausted by this sale because they were to get
its proceeds applied to a debt they owed, and which,
if not satisfied by the price of the land, they would
have to pay.   Unless the sureties were left free to
protect themselves by seeing that the property
brought its full price, they would necessarily be de-
prived of a very valuable right.   A surety would be
loth to bid at such a sale if, after his money was paid
in for the property, and applied for the joint benefit
of himself and co-sureties, he should discover that his
purchase, if it turned out to be a profitable one, was
for the benefit of his co-sureties, who had done noth-
ing to advance the interest of the sale; and, on the
other hand, if the purchase (as it might be) turned
out to be unprofitable, the loss would fall upon him
alone.   Let us suppose that, upon the land in ques-
tion there was a building which constituted (as is
sometimes the case) the real value of the property as
a whole, and that after the sale had been made to
appellant, and his money paid in to the sheriff, and his
redemption money turned over to the purchaser in
the Griffin sale, the house burned.   Could the pur-
chaser then have called on his co-surety to make good
to him one-half of the loss on his purchase?   If this
had happened, and appellant had made such a demand
upon the appellee, would he not have been met with
the answer: "You purchased the property on your
own initiative, and without authority from me, and
therefore you must stand the loss."   Undoubtedly,
this answer would have been made, and, when made,
would have truly stated the legal status of the parties
with reference to the purchase.   The difference be-
tween the attitude of a surety who takes a pledge of
property of the principal debtor to indemnify him
against loss by reason of his suretyship towards his
co-sureties, and that which he occupies toward them

as purchaser of the principal's property at a sale such as that under consideration, is that in the first case the consideration is the suretyship, and this is furnished by all the sureties on the obligation; therefore, the consideration moving from all, the property must indemnify all. In the latter case, the property is being sold in order to furnish that for which it was conveyed—the common indemnity of all the sureties. The consideration of the sale here is the individual money of the purchaser, and in a purchase so made the co-surety who furnishes none of the consideration has no interest.

The judgment is reversed, with directions to dismiss the petition.