# CHARLESTON.

A. E. MILLER *v.* T. H. LILLY *et als.*

Submitted January 25, 1921.    Decided February 1, 1921.

1.    GUARANTY—*Accommodation Indorser Cannot Dispose of Property Mortgaged as Indemnity to the Loss of His Grantors.*

An accommodation payee and endorser of a note, indemnified against loss resulting from his endorsement, by a deed of trust on property of the principal debtor, which also secures payment of the note, and further indemnified against such loss by a guaranty agreement between him and other persons, which contains a clause obligating them to repay to him any sum he should be compelled to pay by reason of his endorsement, cannot actively participate in, or cause, such a disposition of the property on which the debt is secured as will inflict direct and inevitable loss upon the guarantors, and still hold them liable to him upon their contract of guaranty. (p. 613).

2.    SAME—*Indemnified Indorser Cannot Purchase and Rely on Property Securing Him, Defeating Right of His Guarantor to Purchase at Better Price.*

If, in such case, the indemnified endorser, being liable with other persons for other debts of the maker of the note, or being his creditor, forms a combination with other persons for the purpose of purchasing such property at a sale thereof to be made by the trustee, at a price insufficient to pay the debt secured upon it, with intent to endeavor to realize enough out of the property to protect himself and associates similarly situated, in respect of such other debts as well as the secured debt, and actively participates in causing the sale to be made, and, at such sale, purchases the property for himself and his associates, at such price, with knowledge of the desire, readiness and ability of one of the guarantors to purchase it at a price sufficient to pay the secured debt and without actual notice to such guarantor of the time of the sale, and then pays the part of the debt remaining after application of the proceeds of the sale thereon, he cannot recover any part of the money so paid, from such guarantor. (p. 613).

3.    SAME—*Circumstances of Purchase of Mortgaged Property Indemnifying Indorser Admissible as to His Intent to Cause Loss to His Guarantor.*

On an issue, in such case, as to whether the purchasers, in raising a fund sufficient to pay all of the debts of the debtor,

prior to the sale, or obligating themselves to do so, intended to take the property in consideration of payment of all of the debts, so as to relieve the guarantors, all of the facts and circumstances attending the transaction, both before and after the sale, are admissable in evidence.   (p. 617).

4.    SAME—*Instructions Relating to Purchase of Property by Indemnified Indorser Held Properly Refused in Action to Recover from Guarantor.*

Instructions requested by the defendant, in the trial of such a case, which, if given, would have authorized a verdict for him, on the finding of a purchase of the property by the endorser for himself and his associates, at a price less than the secured debt, intention on their part to pay all of the debts of the principal from a fund raised by them and the making of an offer to him by another person to take the property and pay the secured debt, but not requiring any finding as to the time of such offer, are properly refused.   (p. 615).

5.    SAME—*Instruction in Action Against Guarantor of Indorsement for Defendant, as Offer to Purchase Property Mortgaged to Secure Indorser, Held Erroneously Refused.*

It is reversible error, however, to refuse an instruction requested by the defendant, in such case, which, if given, would have required a verdict for him, on a finding that he had, before the sale, made an offer to the plaintiff, to purchase the property at a price sufficient to pay the debt secured upon it, and rejection thereof by the latter.   (p. 615).

6.    SAME—*Declaration on Contract of Guaranty of Indorsement Need Not Allege Insolvency of Principal Debtor.*

A count in a declaration upon such a contract of guaranty as the one above described, need not allege insolvency of the principal debtor.   (p. 617).

Error to Circuit Court, Summers County.

Action by A. E. Miller against T. H. Lilly and others. Judgment for plaintiff, and defendant named brings error.

*Reversed and remanded.*

*A. A. Lilly, T. J. Lilly* and *R. F. Dunlap,* for plaintiff in error.

*T. N. Read,* for defendant in error.

POFFENBARGER, JUDGE:

The judgment under review on this writ of error was rendered in an action of assumpsit, for contribution; and the defense

was, in substance, payment of the secured debt by the plaintiff, out of property of the principal debtor. If there was such payment it was so involved in indirectness and beclouded by uncertainty, as to give rise to the controversy culminating in this litigation.

The principal debtor was a corporation known as, the Hinton Foundry, Machine and Plumbing Company, and the parties to this litigation and others originally bound for the debt were its stockholders and all of them, save one, the plaintiff herein, directors. On Dec. 16, 1907, the company borrowed $6,000.00 from the National Bank of Summers, on its note executed to A. E. Miller, the plaintiff, and endorsed by him, with which it paid off its indebtedness to said bank. At the same time, the six directors of the company entered into an agreement with Miller, by which they obligated themselves to indemnify him from loss, by reason of his endorsement; and, three days later, the company executed a deed of trust by which it conveyed its property to a trustee to secure payment of the note and all renewals thereof, and to indemnify the endorser and save him harmless.

On March 8, 1919, the debt remaining unpaid and having grown to $6,500.00, the property was sold under the deed of trust and purchased by Miller, for the sum of $3,000.00, a substantial, but probably not a full and adequate, consideration, and he took a conveyance thereof, March 27, 1919. A few days later, April 1, 1919, he conveyed it to his brother, C. L. Miller, as trustee, to hold for the use and benefit of himself, J. T. McCreery, A. D. Daly, G. A. Miller, Lee Walker, C. L. Miller and the personal representatives of H. Ewart, deceased, constituting what is called a "pool," three of whom, McCreery, Walker and Ewart, had been guarantors of the debt, and all of whom had been interested in the corporation. Walker having retired from the "pool," the other six members paid and agreed to pay the trustee $9,120.00, out of which all of the indebtedness of the company is to be, or has been, paid, and Miller reimbursed, or to be reimbursed, for all of the money paid by him in the transaction, if the testimony is to be taken literally in dealing with it.

Besides the $6,500.00 debt, the company owed another amounting to $850.00 for which Miller was bound and the defendant, Lilly, was not; and still another amounting, with accrued interest, to about $2,600.00, all of which, except one aliquot part, had been paid by the sureties therefor, of whom Lilly was one, before the sale of the property. Miller and his associates in the new trust of April 1, 1919, undertook to provide for payment of these and all other debts of the company and to take its property in lieu of the money, but to take it in such manner as would deny to Lilly and his associates in the guaranty, not joining them in the enterprise, the benefit of such payment, and leave them still liable for their *pro rata* share of the $6,500.00 debt, after application thereon, of the $3,000.00 paid for the property by Miller, less the costs of the sale. Accordingly, the trustee who sold the property, after deduction of the expenses, $78.00, paid the residue of the proceeds of the sale, $2,922.00, on the note. This left an unpaid balance of $3,637.58 and this action was brought to recover from Lilly one-sixth of that amount, $606.26.

Before the sale, Miller and others interested contemplated, and may have consummated, an arrangement by which the property was to be taken by them for a sufficient amount of money to pay the debts. In his testimony, he swears he did not sell it to the trustee to whom he conveyed it, nor to the beneficiaries of the new trust. His language is, "I didn't sell it. I turned it over—just transferred it to the people that I bought it for." In response to an interrogation as to whether he had "just made a deed to it," he said: "Transferred it to the people I bought it for." In a letter written to the defendant, after the sale, he said: "Some time before the sale I sent out a circular letter, requesting the various guarantors to enter a pool for the purpose of buying the property and holding it for the mutual benefit of the parties involved. Some of the parties agreed to this but others did not take advantage of it." He also admits that the recovery in this action, if any, is to go to the beneficaries of the C. L. Miller trust, or to C. L. Miller, trustee, for them.

Nevertheless, his theory and contention is that there was

no agreement on his part, in acting for himself and his associates, that they were to pay the trustee from whom they bought the property, enough money to pay the debts, or to pay the debts in consideration of a conveyance of the property to them.    On the contrary, his position, though not clearly expressed, is that the property was to be obtained at the trustee's sale for such sum as it could be purchased for and that then they would pay all of the debts and endeavor to reimburse themselves out of the property.    Some of their acts in execution of their plan harmonize with this interpretation.    Through their representative, Miller, they purchased the property for $3,-000.00.    Miller personally paid the balance of the bank debt, $3,637.58, and collected from four of the six guarantors the *pro rata* portions thereof assigned and charged to them, under the terms of the guaranty.    But his contention is apparently inconsistent with other acts.    The "pool" members raised and put into the hands of their trustee $9,120.00, the estimated amount of the company's aggregate indebtedness.    If Miller is to reimburse himself for payment of the balance of the bank debt, by contribution from the guarantors, there is no occasion for resort to the "pool" fund for that purpose.    That part of the indebtedness, $3,637.58, will be paid by the guarantors and, the property having been validly purchased and taken over by the "pool," they cannot charge it.    In that case, they must lose and it is the theory of this action that they must.    Yet the "pool" raised enough money to pay the debt for which the guarantors are liable and the recovery, the plaintiff says, will inure to the benefit of the "pool."    At the same time, he claims he has sustained a loss, and, if his testimony is true, he has paid out money that has not been returned.

This inconsistency and contradiction may be susceptible of solution, however.    The amounts received and sought from the guarantors may enable the "pool" to save and return to its contributors part of the money raised.    In that way, the recovery would inure to the benefit of the contributors to the fund, but not by way of reimbursement for payment of the debt.    The purpose of raising a sufficient sum to pay all of the debts, may have been, in part, full and complete protection

to the plaintiff herein, the endorser of the $6,500.00 note. He may have exacted the raising of enough money to pay all of the debts, by way of provision of a fund to which he could resort for reimbursement, in case he should not want to wait for repayment thereof by the guarantors. Besides, he was an endorser or surety as to the $850.00 debt and, as surety or guarantor, he had paid his part of the $2,600.00 note; and other "pool" members, C. L. Miller, McCreery, Walker and the Ewart estate, had paid their portions of that debt. Miller, of course, wanted the $850.00 note paid, and all desired reimbursement for the money they had paid on the other note. These two debts were not included in the deed of trust. The defendant, Lilly, and two other parties, Litsinger and Meador, not in the "pool," were on the $2,600.00 note, and Lilly and Litsinger had paid their parts of it. Payment of all the debts by the "pool" would include reimbursement of Lilly and Litsinger who refused to join the "pool" and share its burdens and hazards, and this was probably not intended. But, as they were creditors and might attempt to assert their claims and Miller was to be the nominal purchaser of the property and take the risk of possible litigation with them, he may have required the raising of a sufficient sum to cover these claims, but not to be used therefor except upon condition. Exclusion thereof and exaction of contribution from the guarantors not in the "pool," would inure to its benefit, if it was formed for protection and not for purchase at a price equal to the debts. Though contemplated and•tentatively provided for before the sale, it may not have been actually formed until afterward.

Miller was virtually an indemnified surety of the maker of the note, not a cosurety with Lilly and the other guarantors. Nevertheless, he and they were not strangers. They were intimately associated. One who agrees to indemnify a surety, and who afterwards pays the debt for which the surety is bound, is entitled to subrogation the same as the surety would have been if he had paid the debt. *Rittenhouse* v. *Levering,* 6 W. & S. (Pa.) 190. He has right to demand that property of the debtor on which the debt is a lien be applied to payment of the debt and is entitled to the benefit of the lien by way of

subrogation. Guarantors of a mortgage, who have been compelled to pay the mortgage debt, are entitled to be subrogated to all of the securities that are held as collateral to the debt secured by the original mortgage; and therefore, to a subsequent mortgage obtained by the mortgagee as an additional security. *Havens* v. *Wills,* 100 N. Y. 482. See also *Drew* v. *Lockett,* 32 Beav., 499, and Brandt, Sur. & Guar. sec. 348. Of course subrogation is an equitable doctrine and, ordinarily, can be effected only in courts of equity, but legal rights often stand upon equitable principles and are accorded in courts of law, when invocation of the remedies peculiar to courts of equity is unnecessary. If the cosurety obtains indemnity from the principal debtor and pays the debt out of it, he cannot have contribution. Brandt, Sur. & Guar., secs. 294-5. And, if he has such indemnity and relinquishes it or loses it by his negligence or misconduct, he is denied right of contribution. *Id.,* secs. 297-8. By the deed of trust above referred to, the property was annexed to the debt secured by it. Miller was, substantially, though not technically, a surety for that debt. As such, he had right of recourse to the property and so did the guarantors. He could not directly nor indirectly appropriate it to his own use, nor divert it to any other purpose; nor could any of the guarantors do so. Property so pledged cannot be diverted from the purpose of the pledge by anybody. The creditor may pursue it as long as any of his debt remains unpaid, unless he has lost his right, by some wrongful act of omission or commission; and any of his sureties, having paid any part of the debt, are subrogated to his rights against the debtor. By misconduct, the creditor may lose his right against the surety. He must exercise reasonable diligence in his efforts to enforce his right against the debtor. Having the debtor's property partially under his control, by means of the deed of trust, Miller's relation to his guarantors was analogous to that of the debtor. At the same time, he was, in the broad sense of the term, their creditor. They were obligated to him. Manifestly, therefore, he was under some of the duties, and subject to some of the restraints, of a cosurety, a debtor and a creditor. Viewed as a cosurety, he could not purchase the

property for a merely nominal consideration and still hold the guarantors. *Sanders* v. *Weelburg,* 107 Ind. 266; *Livingston* v. *Van Renselaer,* 6 Wend. (N. Y.) 63. No doubt, he had right to purchase it at a reasonable and fair price and in an open and fair way. *Crompton* v. *Vasser,* 19 Ala. 259; *Keiser* v. *Beam,* 117 Ind. 31; *Elrod* v. *Gastineau,* 124 Ky. 609; 32 Cyc. 292. As a ceditor, his situation would be the same or similar. As a debtor, it would be less favorable.

The main purpose of five of the six instructions requested by the defendant and refused by the court was to give him the benefit of the plaintiff's purchase, without regard to the character thereof. The legal principle just referred to amply justified the action of the court in its refusal thereof.

Whether the price paid by Miller was baldly inadequate or merely nominal, is not well developed by the evidence. As to this highly important factor it is slight. While the "pool" raised $9,120.00, apparently on the faith of it, its members may not expect full reimbursement. The defendant offered the plaintiff over $6,700.00 for the property after the purchase, and testified that it was worth $8,000.00. But the five instructions above mentioned are not predicated on the relation between the value and the purchase price. They do not go beyond the offer of purchase made by the defendant. In this respect, they are entirely too narrow.

The sixth instruction asked for by the defendant, if given, would have directed the jury to find for him, if they should believe that, before the sale, the defendant had made a proposition to purchase the property on which the $6,500.00 debt was secured, at a price sufficient to pay that debt in full, and, after the sale, made a further offer to take it at a price that would have made the plaintiff whole and free from loss. Justification of the refusal of this instruction is attempted on the ground of lack of evidence; but the plaintiff testified very positively that he had made such a proposition to the plaintiff, before the property was advertised for sale, and his evidence as to this was not definitely contradicted, if contradcited at all. It was manifestly sufficient to carry the case to the jury as to that issue, and the good faith of the offer finds support in the sub-

sequent offer to take the property for an amount sufficient to make the purchaser whole in respect of the secured debt. The deed of trust was an indemnity given to Miller and placed under his control, for his protection, but his guarantors were entitled to have it faithfully and properly applied to payment of the debt, for their relief. Hence, if he had an opportunity to have it disposed of by his trustee, at a price that would pay the debt in full and relieve him and his guarantors, it was his duty to do so, under principles already stated. He could not forego an opportunity to have the property sold to a purchaser for enough to pay the debt and save him from loss, and then buy it directly or indirectly, at a lower price, or cause it to be sold to some other person at such price, and still hold the guarantors. He was under a duty to abstain from any act or conduct with reference to the security that would prejudice the guarantors, wherefore he could not rightfully cause a sacrifice of the property out of which the debt could have been paid. It matters not that he was liable for other debts of the principal debtor. The property was placed under his control, through the trustee, to pay this particular debt and if he desired the surplus for indemnity against the other debts, it was his duty to make it bring the guaranteed debt, or pay it and look to the property for his indemnity, or rely upon his guaranty and leave the property to the guarantors.

If the defendant made such an offer, and it was rejected, as he says it was, he was under no duty to be on the alert as to the time of the sale. Miller then knew or had reason to believe the property could be sold to him for the full amount of the debt, and it was his duty to apprise him of the time of the sale. The good faith and diligence exacted by the law, under such circumstances, required him to refrain from causation of a sacrificial sale without notice to the defendant, or to any other prospective purchaser at a price that would pay the debt, when notice could have been easily given. Lilly swears he was out of town on the day of the sale and had no knowledge of it, until he was advised of it on his return.

For these reasons, we are of the opinion that there was re-

versible error in the refusal of the sixth instruction prayed for by the defendant.

The defendant's objection to certain evidence of payments made by some of the guarantors was overruled and defendant's objections to offered evidence of substantial transactions, rights and obligations constituting parts of the procedure of the purchasers after the sale of the property by the trustee, were sustained. These facts and circumstances are all relevant, though some of them may not be very material. In its exclusion of evidence, the court took the view that what occurred after the sale was irrelevant and immaterial. In as much as these matters cast light upon the intent and purposes of the parties to the "pool" which may have been formed before the sale, they were all relevant and should have been admitted.

A demurrer to the second count of the declaration, on the ground of lack of an averment of insolvency of the principal debtor, was properly overruled. The special agreement to repay to the endorser any sum he should be compelled to pay, found in the guaranty agreement, absolved him from duty to exhaust the resources of the principal debtor, as a condition precedent to right of action. If he was compelled to pay, as the count alleges, this agreement gave an immediate right of action against the guarantors.

For the error in the refusal to give the last one of the six instructions requested by the defendant, the judgment will be reversed, the verdict set aside, and the cause remanded for a new trial. It is unnecessary to enter upon an inquiry as to whether other errors noted would call for reversal. Presumptively, they will not be repeated upon the new trial.

*Reversed and remanded.*